# WARE & Another *v.* GALVESTON CITY COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF TEXAS.

Argued March 19th, 1884.—Decided March 31st, 1884.

*Action—Limitations, Statute of—Parties—Trust.*

If one deals with an agent as principal, and the right of action against the agent becomes barred by the statute of limitations, it is also barred against the principal, unless circumstances of equity are shown to prevent the operation of the statute, or unless it appears that there was fraud in the concealment of the agency.

The circumstances of this case disclose no trust in favor of the complainants. The heir at law of a deceased person is not the proper party to enforce an alleged trust in personal property made for the benefit of the deceased.

The facts making the case are stated in the opinion of the court.

*Mr. P. C. Baker* and *Mr. Walter Gresham* for appellants submitted the case on their brief.

*Mr. W. H. Goddard* for appellee.

Mr. JUSTICE MATTHEWS delivered the opinion of the court.

This is an appeal from a decree dismissing a bill in chancery, upon general demurrer for want of equity.

The complainants, also appellants, are the heirs-at-law of David White, deceased, citizens respectively of Alabama and Florida; the defendant, the appellee, is alleged to be a corporation incorporated by an act of the Congress of the Republic of Texas, and a citizen of that State.

It is alleged in the bill, which was filed October 11th, 1880, that the Republic of Texas, on January 25th, 1838, issued a patent to Michael B. Menard, in consideration of $50,000, for one league and *labor* of land on and including the east end of Galveston Island; that David White, the ancestor of the complainants, advanced and paid that sum for Menard, to secure repayment of which the latter executed and delivered his mortgage on the land to White. Menard at the time had associates, jointly interested with him in the purchase, and others became so subsequently, and the association was a partnership, with a view of organizing a joint stock company for the sale of the land, for profit, in lots, and distribution of the net proceeds as dividends to shareholders, Menard being, however, the managing partner, and until April 18th, 1837, holding the legal title, the indebtedness to White having been incurred in his own name, and the mortgage executed by him individually for the repayment of the same.

About the date last mentioned, Menard released to one Triplett 640 acres of the land to compromise a conflicting claim of

title; and afterwards, about June 15th, 1837, the whole original tract, including that released to Triplett, was conveyed by all parties in interest, to trustees in trust, for the purpose of carrying into effect the original plan, Triplett and those interested with him becoming co-associates with Menard and his associates. To that end, the trustees were to issue 1,000 shares of stock, of which 400 were set aside to provide for certain certificates previously issued under the Menard interest, and the remaining 600 shares were to be sold and the proceeds applied first to the payment of expenses, and then to be divided, one-third to the Triplett interest and two-thirds to the Menard interest, but the debt to White was to be provided for out of the Menard shares; and provision was made for issuing trustees' certificates to the individual owners of interests, which was in fact done, and the holders of certificates, which were assignable, became associated as the Galveston City Company.

It is alleged, however, that out of the 600 shares, a number deemed sufficient for which no certificates were issued, but part of those which otherwise would belong to the Menard interest, were reserved to be sold for the purpose of paying the debt to White, so as to relieve the Triplett interest from any charge on that account, and so as also to indemnify Menard individually against his liability therefor. The precise number of the shares thus set apart and appropriated, it is alleged, is not known; but it is charged that on March 10th, 1851, twenty-nine shares of the original number so appropriated still remained in the hands of the company undisposed of.

On April 13th, 1838, the holders of these certificates seem to have organized as stockholders of a future corporation, the Galveston City Company, and elected five directors, to whom, as directors of the association, the legal title to the land was conveyed by the trustees. Thereafter the outstanding trustees' certificates were called in, and "renewal certificates," so called, were issued in exchange, which represented the shares of the company.

It is further alleged that about November 7th, 1838, the company, by Menard, its president and agent, but in his individual name, paid White $25,000 on account of the debt due

to him out of the proceeds of the stock reserved for that purpose; and about the same time entrusted Menard, as agent of the company, with fifty shares of the reserved stock, for sale, to pay the remainder of the debt to White. Menard sold twenty-one of these shares and paid to White the proceeds thereof, being $10,550, in 1839, which, with the previous payment, is all that has been paid on account of the debt due to him, leaving $14,450 of the principal sum unpaid.

On February 5th, 1841, the stockholders of the association became incorporated by an act of the Congress of the Republic of Texas as the Galveston City Company, the defendant below.

Long after the organization of the corporation, on March 10th, 1851, Menard made a written report to the company of his agency in the sale of the fifty shares entrusted to him for the purpose of paying the debt to White. In that report, he recounted the circumstances of the history of the transaction, and the facts as to the sale of the twenty-one shares, and the payment made to White, showing the balance due, as above set forth, for which he stated a suit was then pending against him individually, and for which he held the remaining twenty-nine shares of stock. Valuing them at $5,800, which he estimated to be their market value, there would be a deficiency of $8,650 to provide for on the amount due to White. He also claimed that he was in advance for the company, in the sum of $13,000, on other accounts, and asked that the company make provision for his reimbursement by a par credit on its books for the full amount of $21,650. The board of directors, by resolution, admitted the correctness of Menard's statement of his account, and ordered a credit to him on its books for the amount stated.

The suit referred to by Menard, as pending against him, had been brought in the name of one Lipscomb, administrator of White, the latter having died December 10th, 1841, to recover the balance due to White's estate, and to enforce the lien of the mortgage upon the land. To this action, Menard had pleaded the statute of limitations as a bar, and about May 20th, 1851, it was dismissed, on his motion, for want of prosecution.

It is alleged that nothing further has ever been done by Menard, who died insolvent, in 1856, nor by the defendant, towards the payment of the debt due to White's estate; and that neither the plaintiffs nor the personal representatives of White had any knowledge, or by reasonable diligence could have learned, of the facts, of which they obtained information only within two years prior to the filing of the bill, in reference to the liability of the corporation as the principal, for whom Menard acted as agent, to pay the debt due to White, nor of the acknowledgment made of it by the company in 1851, as already detailed, nor of the trust of the twenty-nine shares of stock appropriated for that purpose; and that, in fact, everything that would lead to such knowledge has been studiously concealed from them by the defendant, its officers and agents.

The bill prays for an account of what is due; that the amount be decreed to be a lien on the land of the defendant; that the twenty-nine shares of stock alleged to have been reserved for the purpose be sold for the payment of the amount found to be due, and for general relief.

It seemed to be supposed in argument that some support for this bill may be found in the allegations that charged the defendant as the successor in law, liable for their obligations, of the associates who were the undisclosed principals, on whose behalf Menard contracted the debt with White. But manifestly the statute of limitations that barred the claim against Menard, and the express lien of the mortgage, a defence not denied to have become perfect as to them, would equally protect those on whose behalf Menard acted as agent, there being no circumstances of equity to prevent the operation of the statute in their favor. None such are alleged, the mere ignorance of the appellants, and even the concealment of the fact that Menard was merely an agent, and of those for whom he was agent, no fraud on their part being charged, manifestly is insufficient for that purpose.

It is equally plain that there is no trust as to the twenty-nine shares of stock alleged to have been placed in Menard's hands as a fund for the payment by him of the debt to White. That arrangement is stated to have been intended as an indemnity

to Menard against his own personal liability, and as a guaranty in favor of the Triplett interest.   And when, in 1851, Menard made his report, and its recommendations were adopted by the company, the trust as stated seems rather to have been an out-and-out sale to him of these shares, for he has credit upon the books of the company for the amount of his advances and liabilities, and thus, as between himself and the company, becomes the principal debtor, and there is no ground for an inference that the shares in question were, or continued to be, in the control of the company.

But even were this otherwise, it would be impossible to construe the arrangement into a trust for the benefit of White's estate.   There was no privity, and no notice, and the arrangement obviously was merely an adjustment, made among the parties for their own convenience, of the accounts between them, not intended to confirm or to confer any rights upon the appellants.

The objection that the suit should have been brought by a personal representative of White, and that it cannot be maintained by his heirs-at-law, seems also to be well taken, as no sufficient reason is alleged why the administrator, who prosecuted the suit for the foreclosure of the mortgage, might not have been complainant in the present suit.

The claim itself, both as a debt and a lien upon the land, against the party with whom it was contracted, as we have said, is admitted to be barred by the lapse of time; there is no ground stated in this bill why, in equity, it should be revived against the appellee.

The demurrer was properly sustained, and the decree dismissing this bill is accordingly

*Affirmed.*