# STANLEY v. SCHWALBY.

## ERROR TO THE SUPREME COURT OF THE STATE OF TEXAS.

No. 1092. Submitted January 6, 1893. — Decided February 6, 1893.

For purposes of jurisdiction there is no distinction between suits against the government directly, and suits against its property.

Where property of the United States is involved in a litigation to which they are not technically parties under authority of an act of Congress, the attorney for the United States may intervene by way of suggestion, and in such case the court will either stay the suit or adjust its judgment according to the rights disclosed on the part of the government.

United States v. Lee, 106 U. S. 196, distinguished from this case.

When the United States become a party defendant to an action brought by a citizen the bar of the statute of limitations is a valid defence, if set up and maintained.

The defence of adverse possession may be set up by the United States in an action to try title to real estate, and, if supported by the proof, is a valid defence.

When an officer of the United States, in possession under their authority of real estate claimed by them, is sued in a state court in trespass to try title to the real estate, and sets up that claim and that authority as a defence in the action, an adverse judgment in the highest court of the State draws in question the validity of an authority exercised under the United States, and gives this court jurisdiction to review that decision on writ of error.

THIS was an action of trespass to try title, brought February 23, 1889, in the District Court of Bexar County, Texas, against David S. Stanley and three other defendants, by Mary U. Schwalby, whose husband, J. A. Schwalby, was afterwards made a party plaintiff, to recover a certain parcel or lot of land in the city of San Antonio. Mrs. Schwalby claimed title to one-third of the lot, as one of the three heirs of her father, Duncan B. McMillan, deceased; and subsequently one Joseph Spence, Jr., intervened and asserted title to one-third of the lot through a conveyance made to him by Duncan W. McMillan, another of said heirs. Judgment of possession of the whole lot was prayed, upon an averment that defendants entered without right or title.

The land in question was part of a military reservation of the United States, and was used and occupied as a military post, and David S. Stanley and his codefendants were officers of the army of the United States, holding and occupying the land under authority of the United States. They pleaded not guilty, and specially that they held lawful possession of the property as officers and agents of the United States, which had had title and right of possession, under conveyance duly recorded, since the year 1875, as innocent purchasers for value without notice; and also the three-year, the five-year, and the ten-year statutes of limitation of Texas, and a claim for allowance for permanent and valuable improvements.

The United States District Attorney appeared for the United States, acting, as he alleged, "by and through instructions from the Attorney General of the United States," and joined on behalf of the United States in the pleas of the other defendants.

The District Court being of opinion that the United States could not set up the statute of limitations, whether for three, five, or ten years, or otherwise, the pleas of the United States to that effect were ordered to be stricken out.

On the trial evidence was adduced on both sides bearing upon the title and the purchase of the property by the United States and the value of the improvements. It appeared that one Dignowity was the common source of title, and had executed a statutory warranty deed of the lot in controversy to Duncan B. McMillan, dated and acknowledged May 9, 1860, but not recorded until September 30, 1889; that McMillan, then a widower, died February 5, 1865, leaving three children him surviving, of whom plaintiff, Mary U., was born September 11, 1848, and married J. H. Schwalby, January 18, 1871; and Duncan W., was born November 2, 1850, and conveyed to Joseph Spence, Jr., the intervenor, March 26, 1889, by deed acknowledged that day and filed for record March 29, 1889.

Dignowity died in April, 1875, testate, and by the terms of his will, which was duly probated that month, his property passed to his widow, who, on May 1, 1875, in her own right, and as independent executrix of her husband's will, released and

quitclaimed to the city of San Antonio all her right, title and interest in the lot in question, " known as the McMillan lot," with covenant of warranty against any person claiming by, under or through Dignowity or his estate. The city of San Antonio conveyed this and three other lots by warranty deed, dated June 16, 1875, and recorded October 21, 1875, to the United States for military purposes.

General Stanley testified that he was a brigadier general of the United States army, that his codefendants were officers of the same, and that they took and held possession as such officers.

It was contended that the evidence tended to show that the city and the United States took with notice of a previous sale to McMillan; that McMillan had never paid the purchase price in full; that the unrecorded deed was never delivered to McMillan, but held in escrow; and that Dignowity paid the taxes on the lot from 1860 to 1875.

The District Court gave judgment in favor of the plaintiffs Schwalby and Spence, that each had title to one-third of the lot and for the possession of the whole, and also in favor of the United States for $1521 for the improvements, that being the difference between the value thereof and the amount found due from the United States for the use and occupation of the premises. Both parties excepted to the judgment and perfected an appeal therefrom. The Supreme Court of Texas reversed the judgment, and rendered judgment dismissing the action as to the United States; that plaintiffs recover from the defendants, Stanley and others, possession of the lot in question, and the sum of two hundred dollars, being the value of the use and occupation of said land, together with costs; to review which judgment this writ of error was sued out. The opinion is reported, in advance of the official series, in 19 S. W. Rep. 264.

*Mr. Assistant Attorney General Maury* for plaintiffs in error.

*Mr. A. H. Garland* for defendants in error.

Supposing the United States properly in the case, for the present, it could plead no limitation under the Texas law as especially no tribunal was open for these parties to get relief as against it, and, therefore, it was quite right that its pleas of limitation were struck out. *United States* v. *Insley*, 130 U. S. 263 ; *United States* v. *Nashville, Chattanooga &c. Railway*, 118 U. S. 120 ; *United States* v. *Thompson*, 98 U. S. 486 ; *Dow* v. *Johnson*, 100 U. S. 158 ; *Lindsey* v. *Miller*, 6 Pet. 666.

This immunity from suit, enjoyed by the United States, does not protect its officers who commit trespass, and withhold illegally the possession of lands from rightful owners. *United States* v. *Lee*, 106 U. S. 196.

Although the *Lee Case* was hotly and stubbornly contested on every inch of the ground, and was decided at last by a bare majority, yet it has received since then the succor of several indorsements, if any were requisite. *Cunningham* v. *Macon & Brunswick Railroad*, 109 U. S. 446, 452 ; *Hans* v. *Louisiana*, 134 U. S. 1 ; *In re Ayers*, 123 U. S. 443, 501 ; *Pennoyer* v. *McConnaughy*, 140 U. S. 1.

And, following as a necessary consequence, the state Supreme Court properly held that the United States could not be made a party in this suit in the absence of an act of Congress authorizing it — not even if the district attorney had instructions to make it a party which instructions do not appear in the record. *Carr* v. *United States*, 98 U. S. 433. See also cases above cited. The latter case was not interfered with as to this point in the *Lee Case.*

It is probable the instructions were to defend for these parties, who claimed to hold the land as United States officers in its name, and not to make the United States a party ; but as held by the court, such instructions to make it a party, if given, would have been of no force. Therefore, the dismissal of the United States from the case was certainly correct.

Mr. CHIEF JUSTICE FULLER delivered the opinion of the court.

In *The Siren*, 7 Wall. 152, 154, Mr. Justice Field, who spoke for the court, in adverting to the familiar rule of the common law that the sovereign cannot be sued in his own courts without his consent, and the ground upon which the rule rested, said : " This doctrine of the common law is equally applicable to the supreme authority of the nation, the United States. They cannot be subjected to legal proceedings at law or in equity without their consent ; and whoever institutes such proceedings must bring his case within the authority of some act of Congress. Such is the language of this court in *United States* v. *Clarke*, 8 Pet. 436, 444. The same exemption from judicial process extends to the property of the United States, and for the same reasons. As justly observed by the learned judge who tried this case, there is no distinction between suits against the government directly, and suits against its property."

If then this suit had been directly against the United States or the property of the United States, it could not have been maintained, and it is only upon the proposition that it was brought, not against the United States, but against the officers of the United States as individuals, although holding possession of the property under their authority and as belonging to them, that it proceeded to judgment. The District Attorney of the United States acting, as he alleged, " by and through instructions from the Attorney General of the United States," filed certain pleas on behalf of the United States, among others, of limitation, and for allowance for valuable improvements. No question seems to have arisen in the state District Court as to the authority of the district attorney to do this. The court ruled that the United States could not plead the statutes of limitation, and therefore struck those pleas out, but sustained the plea claiming an allowance for improvements, and rendered judgment in favor of the United States for the value thereof. The Supreme Court of Texas held that as the instructions of the Attorney General were not found in the record and no act of Congress empowering him to make the United States a party, either plaintiff or defendant, to an action in a state court was referred to, the United States could not be regarded as

a party and therefore reversed the judgment below and rendered judgment dismissing the United States from the case. The error assigned to this action of the Supreme Court has not been pressed by counsel for the government and we are not called upon to express any opinion upon it. We should remark, however, that from a very early period it has been held that even where the United States is not made technically a party under the authority of an act of Congress, yet where the property of the government is concerned it is proper for the attorney for the United States to intervene by way of suggestion, and in such case if the suit be not stayed altogether, the court will adjust its judgment according to the rights disclosed on the part of the government thus intervening. Such was the leading case of *The Exchange*, 7 Cranch, 116, 147, where the public armed vessel of a foreign sovereign having been libelled in a court of admiralty by citizens of the United States to whom she had belonged and from whom she had been forcibly taken in a foreign port, by his order, the District Attorney filed a suggestion stating the facts, and the Circuit Court having entered a decree for the libellants, disregarding the suggestion, this court, upon an appeal taken by the attorney of the United States, reversed the decree and dismissed the libel, and Mr. Chief Justice Marshall, in delivering the opinion of the court, said: "There seems to be a necessity for admitting that the fact might be disclosed to the court by the suggestion of the attorney for the United States."

Probably the instructions here were that the District Attorney should make defence for General Stanley and his fellow officers, and in addition he thought it wise to bring the rights of the United States to the attention of the court by application in their name.

The argument for the plaintiffs in error is confined to the disposition of the pleas setting up the statutes of limitation, in respect of which the decision did not turn upon the question whether on the facts the bar was or was not complete, but upon the view that, although as between individuals a perfect defence might have been made out, it could not be availed of by or under the United States.

By the Texas statute relied on it was provided that every suit to recover real estate "as against any person in peaceable and adverse possession thereof under title or color of title, shall be instituted within three years next after the cause of action shall have accrued, and not afterwards." Title was defined to mean a regular chain of transfer from or under the sovereignty of the soil; and color of title to mean a consecutive chain of such transfer down to the person in possession, without being regular, as if one or more of the muniments were not registered or not duly registered. "Peaceable possession" was described as "such as is continuous, and not interrupted by adverse suit to recover the estate," and "adverse possession" was defined as "an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another." The statute also provided that five years' peaceable and adverse possession of real estate, "cultivating, using or enjoying the same and paying taxes thereon, if any, and claiming under a deed or deeds duly registered," should be a bar; and that ten years' like peaceable and adverse possession, with cultivation, use or enjoyment, should have a like result; and also that whenever in any case the action of a person for the recovery of real estate was barred, the person having such peaceable and adverse possession should "be held to have full title, precluding all claims." 2 Sayles' Tex. Civ. Stats. 109, Tit. 62, c. 1.

The Supreme Court of Texas was of opinion that the bar of the statute could not be interposed by or under the United States, because the United States are not bound by such statutes, as well as because no action could be brought against the United States.

The rule that the United States are not bound and the reason for it are thus given in *United States* v. *Nashville, Chattanooga &c. Railway*, 118 U. S. 120, 125: "It is settled beyond doubt or controversy — upon the foundation of the great principle of public policy, applicable to all governments alike, which forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided — that the United States, asserting rights

vested in them as a sovereign government, are not bound by any statute of limitations, unless Congress has clearly manifested its intention that they should be so bound." And this doctrine was declared by the court in *United States* v. *Insley*, 130 U. S. 263, 266, to be "applicable with equal force, not only to the question of the statute of limitations in a suit at law, but also to the question of laches in a suit in equity."

To the same effect, Mr. Justice Story, in *United States* v. *Hoar*, 2 Mason, 311, 313, 314, said: "The true reason, indeed, why the law has determined that there can be no negligence or laches imputed to the crown, and, therefore, no delay should bar its right, (though sometimes asserted to be, because the king is always busied for the public good, and, therefore, has not leisure to assert his right within the times limited to subjects, 1 Bl. Com. 247,) is to be found in the great public policy of preserving the public rights, revenues and property from injury and loss, by the negligence of public officers. And though this is sometimes called a prerogative right, it is in fact nothing more than a reservation or exception, introduced for the public benefit, and equally applicable to all governments. . . . But, independently of any doctrine founded on the notion of prerogative, the same construction of statutes of this sort ought to prevail, founded upon the legislative intention. Where the government is not expressly or by necessary implication included, it ought to be clear from the nature of the mischiefs to be redressed, or the language used, that the government itself was in contemplation of the legislature, before a court of law would be authorized to put such an interpretation upon any statute. In general, acts of the legislature are meant to regulate and direct the acts and rights of citizens; and in most cases, the reasoning applicable to them applies with very different, and often contrary force to the government itself."

But, as observed by Mr. Justice Strong, delivering the opinion of the court in *Dollar Savings Bank* v. *United States*, 19 Wall. 227, 239, while the king is not bound by any act of Parliament unless he be named therein by special and particular words, he may take the benefit of any particular act though

not named. And, he adds, that the rule thus settled as to the
British crown is equally applicable to this government; and
that so much of the royal prerogative as belonged to the king
in his capacity of *parens patriæ* or universal trustee, enters as
much into our political state as it does into the principles of
the British constitution.

The general rule is stated in Chitty on the Law of the
Prerogatives of the Crown, 382, clearly to be "that though
the king may avail himself of the provisions of any acts of
Parliament, he is not bound by such as do not particularly
and expressly mention him." "For it is agreed in all our
books that the King shall take benefit of any act, although
he be not named." *Calvin's Case,* 7 Rep. 32a; *Magdalen Col-
lege Case,* 11 Rep. 67, 68; *The Queen & Buckberd's Case,* 1
Leonard, 150; 1 Bl. Com. 262.

We think there is nothing to the contrary in *Rustomjee v.
The Queen,* 1 Q. B. D. 487, where, by a treaty between the
Queen of England and the Emperor of China, the Emperor
had paid to the British government a sum of money on
account of debts due to British subjects from certain Chinese
merchants, who had become insolvent, and it was held that a
petition of right would not lie by one of the British merchants
to obtain payment of a sum of money alleged to be due to him
from one of the Chinese merchants, and that the statute of
limitations did not apply to a petition of right. The political
trust with which Her Majesty was charged in respect of her
own subjects afforded no basis for the prosecution in a court
of a claim as against a debtor or trustee, and, of course, limita-
tion had no application. Indeed, the form of proceeding by
petition of right, even as simplified and regulated by 23 and 24
Vict. c. 34, is so far variant from proceedings between subject
and subject, as to give adjudications thereunder but slight, if
any, bearing upon the question under discussion. *Tobin v.
The Queen,* 14 C. B. (N. S.) 505.

It was in view of the ancient rule and its derivation that the
Supreme Court of Wisconsin in *Baxter v. State,* 10 Wisconsin,
454, held that while the statute cannot be set up as a defence
to an action by the government, this rule being founded upon

the public good and the protection and preservation of the public interest, instead of furnishing any support for the position that as a defendant the State could not have the benefit of the statute, would fully sustain the opposite conclusion.

And so, in *People* v. *Gilbert*, 18 Johns. 227, it was pointed out by way of illustration that the same rule of construction applied to the statute concerning costs, which the State may recover, though not obliged to pay them because not included in the general terms of the statute.

It is obvious that the ground of the exemption of governments from statutory bars or the consequences of laches has no existence in the instance of individuals, and we think the proposition cannot be maintained that because a government is not bound by statutes of limitation therefore the citizen cannot be bound as between himself and the government.

Of course, the United States were not bound by the laws of the State, yet the word "person" in the statute would include them as a body politic and corporate. Sayles, Art. 3140; *Martin* v. *State*, 24 Texas, 61, 68.

This brings us to consider the objection that the United States cannot obtain or be protected in title through adverse possession, unless an action would lie against them for the recovery of the property. It by no means follows that because an action could not be brought in a court of justice, therefore possession might not be regarded as adverse so as to ripen into title. In the case of a government, protest against the occupancy and application for redress in the proper quarter would seem to be quite as potential in destroying the presumption of the right to possession, or of the abandonment of his claim by another, when an action cannot be brought, as the action itself when it can.

In *Comegys* v. *Vasse*, 1 Pet. 193, 216, quoted from and applied by Mr. Justice Lamar in *Williams* v. *Heard*, 140 U. S. 529, 543, it was remarked by Mr. Justice Story: " It is not universally, though it may ordinarily be one test of right, that it may be enforced in a court of justice. Claims and debts due from a sovereign are not ordinarily capable of being so enforced. Neither the King of Great Britain, nor the govern-

ment of the United States, is suable in the ordinary courts of justice for debts due by either. Yet, who will doubt, that such debts are rights?" However, the very institution of this suit shows, as the fact is, that these claimants could have brought such an action as this at any time between the date when the United States took possession and the filing of this petition.

As stated by Mr. Justice Miller, in *Cunningham* v. *Macon & Brunswick Railroad,* 109 U. S. 446, 451, it may be accepted as unquestioned that neither the United States nor a State can be sued as defendant in any court in this country without their consent, except in the limited class of cases in which a State may be made a party in this court by virtue of the original jurisdiction conferred by the Constitution. Accordingly, whenever it can be clearly seen that a State is an indispensable party to enable a court, according to the rules which govern its procedure, to grant the relief sought, it will refuse to take jurisdiction. But in the desire to do that justice, which in many cases the courts can see will be defeated by an extreme extension of this principle, they have in some instances gone a long way in holding the State not to be a necessary party, though its interests may be more or less affected by the decision. Among these cases are those where an individual is sued in tort for some act injurious to another in regard to person or property, in which his defence is that he has acted under the orders of the government.

In these cases he is not sued as an officer of the government, but as an individual, and the court is not ousted of jurisdiction because he asserts the authority of such officer. To make out that defence he must show that his authority was sufficient in law to protect him. In this class is included *United States* v. *Lee,* 106 U. S. 196, where the action of ejectment was held to be in its essential character an action of trespass, with the power in the court to restore the possession to the plaintiff as part of the judgment, and the defendants Strong and Kaufman, being sued individually as trespassers, set up their authority as officers of the United States, which this court held to be unlawful, and therefore insufficient as a defence.

In such a case the validity of an authority exercised under the United States is drawn in question, and where the final judgment or decree in the highest court of a State in which a decision could be had is against its validity, jurisdiction exists in this court to review that decision on writ of error.

The case before us is an action of trespass to try title, brought against officers of the United States, exercising an authority under the United States, in holding possession of the property in controversy. Laying out of view the intervention by the District Attorney of the United States in the direction of making the United States a party, and considering the case in its relation to the defences interposed by General Stanley and his fellow officers, we are unable to perceive why the statutory bar, if complete, could not be availed of. Although not bound by statutes of limitation, the United States as we have seen were entitled to take the benefit of them, and inasmuch as an action could have been brought at any time after adverse possession was taken, against the agents of the government through whom that was done and by whom it was retained, the objection cannot be raised against them that the statute could not run because of inability to sue. The alleged trespass was committed by the defendants, as the servants of the United States and by their command; yet if they showed the requisite possession in themselves as individuals, though in fact for the United States, under whose authority they were acting, the defence was made out. Agents when treated as principals may rely upon the protection of the statute. *Ware* v. *Galveston City Company*, 111 U. S. 170.

In any view, they were not mere trespassers, and if subject to suit during the statutory period of peaceable and adverse possession, they could not, after its expiration, be found guilty of an unlawful withholding from the original owner. The tort which must be the gist of the action in order to render it maintainable against the officers of the United States as individuals, could not be predicated of them under such circumstances.

We refrain from any consideration of the case upon its merits, but, for the reasons indicated, reverse the judgment,

and remand the cause for further proceedings not inconsistent with this opinion.

*Judgment reversed.*

MR. JUSTICE FIELD dissenting.

I am unable to agree with the majority of the court in the judgment rendered in this case, or in the reasons upon which it is founded. The action is styled one of trespass to try title. It is, in fact, the form adopted in Texas to determine the title to real property in controversy, and the principles governing ejectments govern their disposition. It was commenced in a District Court of the State of Texas, in the county of Bexar.

The petition, the first pleading in the action, alleges that Mary U. Schwalby, who is herein joined by her husband, was, on the first of February, 1889, lawfully seized of certain described premises in the county of Bexar, holding the same in fee simple, and entitled to the possession thereof; that afterwards, on the second of February, the defendants unlawfully entered upon the premises and dispossessed her therefrom, and withholds them from her, setting out a description of the premises in full. The petition concludes with a prayer that the plaintiff may have judgment for the recovery and possession of the premises, and for costs.

The premises were a part of a military reservation of the United States in Texas, and were occupied as a military post. The defendant, David S. Stanley, and his codefendants were officers of the army of the United States, and as such were in possession of and held the land, and, answering for himself and them, he says that as individuals they do not claim, and have no title to, the land in controversy, but claim that they are lawfully in possession thereof as officers and agents of the United States, and that the United States "*holds in herself*" complete title to the property in controversy, and that the defendant, as an officer of the United States in possession, enters a plea of not guilty to the trespasses and allegations charged in the petition.

The designation thus given to the United States as "*herself*," in a pleading drawn by one of their attorneys is open to criti-

cism, as, in the Constitution, both before and since the civil war, the United States have always been designated in the plural; thus, Article III, section 3, declares that "treason against the United States shall consist only in levying war against *them*, or in adhering to *their* enemies, giving them aid and comfort;" and Article XIII, adopted since the civil war, declares that "neither slavery nor involuntary servitude, except as a punishment for crime, whereof the party shall have been duly convicted, shall exist in the United States or any place subject to *their* jurisdiction."

In the amended answer filed by the defendants they pleaded not guilty, and alleged that they had lawful possession of the property as officers and agents of the United States, which had title and right of possession since 1875 under conveyance duly recorded, and that they were innocent purchasers for a valuable consideration, without notice of any outstanding title. They also pleaded specially the three years', the five years', and the ten years' statutes of limitations, and set up a claim for allowance for permanent and valuable improvements.

I fully agree with the court that, if this action had been brought directly against the United States, it could not be sustained, for it is among the axioms of the law that the government, State or national, is not amenable to civil process at the suit of a private citizen, except upon its consent to submit to such jurisdiction. Any judgment rendered in proceedings not voluntarily assented to would necessarily be void, whether the judgment be rendered for money or specific property. It may be doubted whether the appearance in this case of the United States, by a District Attorney, without further evidence of their assent to the process, is sufficient. The answer of the United States that they appear by the District Attorney, under instructions of the Attorney General of the United States, the Supreme Court of Texas held to be insufficient, as the instructions of that officer did not appear in the record, and there was no act of Congress authorizing him to make the United States a party to the action in the state court. That court, therefore, reversed the judgment of the lower court, and dismissed the action so far as it was against

the United States. It also held that the United States could not plead the statute of limitations. In this decision I think that court was clearly right, and, although this court does not expressly approve that doctrine, it would seem from its language that it might be implied that the United States could plead the statute. From any such implication I emphatically dissent. The whole theory upon which statutes of limitations are founded, whether for the repose of litigation, or upon presumption of performance, from lapse of time, of the obligations alleged, or from other causes, is that, during the period prescribed by the statute, the party has had full right, without legal hindrance, to prosecute his demand against the party invoking the bar of the statute, and has failed to do so. As justly observed by the court below, "it would be contrary to reason to hold that it was the intention of the law-making power that a right should be barred by failure to bring an action within a prescribed time, when, at the same time, the right to bring the action was denied."

Now, no such bar can be pleaded by the United States for the reason that no action can be instituted against them without their express consent. They can have no occasion to plead such a statute, because they can always insist upon their immunity from judicial process. If they assent to the action they, of course, do not wish the benefit of such a statute.

The cases where the government, State or national, without being named, may invoke the benefit of a law passed for private parties, applies to a very different class of cases than the one before us. A specified time for presenting claims against the government may be prescribed by statute, but we may look in vain for cases like the one before us, in which the government, not being suable during the time prescribed by statute, may interpose the lapse of time as a bar to an action whenever it is subsequently permitted.

But it is admitted that in cases where officers of the army, or agents of the government, State or national, are in possession of real property, holding it for either of them, they cannot, in an action for its recovery, rely upon their agency or official character under the government as a justification of

their possession, without showing a title in the government. They must show in that way their right to the possession under that title. The case of *United States* v. *Lee*, 106 U. S. 196, is sufficient authority on this point. Referring to that case, in *In re Ayers*, 123 U. S. 443, 501, this court said: "In that case the plaintiffs had been wrongfully dispossessed of their real estate by defendants, claiming to act under the authority of the United States. That authority could exist only as it was conferred by law, and as they were unable to show any lawful authority under the United States, it was held that there was nothing to prevent the judgment of the court against them as individuals, for the individual wrong and trespass." See also *Cunningham* v. *Macon & Brunswick Railroad*, 109 U. S. 446, 452. Establishing the title of the government and thus showing their own possession under the government to be rightful, the action will be defeated. But the officers or agents cannot plead the statute of limitations in their own behalf if they hold under the United States, and in maintaining a different doctrine there is, in my opinion, a plain error in the decision of the court. The action of ejectment, or of trespass to try title, necessarily implies the wrongful possession of the defendant. He can only defeat that position by showing title or ownership in the party under whom he holds or in himself. But how can he show title or ownership in himself? If he has a title by deed which he can trace back beyond the claim of the plaintiff he can do so ; but if he relies upon the statute he must show adverse possession of the property in himself for the period prescribed. To render his possession adverse it must be accompanied by a claim of title or ownership in himself as against the whole world. It must be exclusive and continuous, and not referable to any other claimant. If the defendant admits that any other person, or that the government, has the title, or owns the property at any time within the period of prescription, his adverse possession, on which alone he can rely, fails, and his claim of right to the property is defeated. This doctrine is sustained by the whole current of authorities in the English and American courts, as will be seen by reference to the

treatise on the statute of limitations by Angell, and also to the one by Buswell, under the chapters on "Adverse Posses-sion," where the adjudged cases are cited. See also Sedgwick and Wait on Trial of Title to Land, sec. 729 to sec. 740; and *Doswell* v. *De la Lanza*, 20 How. 29; *Melvin* v. *Merrimack Proprietors*, 5 Met. (Mass.) 15; *Ward* v. *Bartholomew*, 6 Pick. 408; and *Adams* v. *Burke*, 3 Sawyer, 415, 420.

The statute of Texas prescribing the limitations of actions for the recovery of real property is not materially different, except in the periods designated, from the statutes of limita-tions of other States. It provides that every suit to recover real estate "as against any person in peaceable and adverse possession thereof, under title or color of title, shall be insti-tuted within three years next after the cause of action shall have accrued, and not afterwards." "Peaceable possession" is described as "such as is continuous, and not interrupted by adverse suit to recover the estate." Adverse possession is defined as being "an actual and visible appropriation of the land, *commenced and continued under a claim of right incon-sistent with and hostile to the claim of another.*"

If the defendants cannot show title in the party under whom they hold, or in themselves, they are trespassers against the real owner, whether they claim under the government or a private party, and the doctrine that if they hold under the government, the title to which is not established, they can be allowed to set up adverse possession in themselves, or, in other words, to plead the statute of limitations, when they expressly disavow any claim or title to the property, upon the assertion of which alone such adverse possession can be maintained or the statute made available, is, in my judgment, in conflict with well settled principles, and the whole course of judicial de-cisions in England, and in every State of the Union. The defendants, by their own admissions, are not in a position to set up any such defence.