## BAKER *v.* CUMMINGS.

PARTNERSHIP ; ACCOUNTING ; EQUITY PRACTICE ; INTEREST ; AUDITOR.

1. Where a sale of a certain class of partnership business by one partner to his copartner is, after dissolution, set aside for fraud and an accounting ordered, for the purposes of the accounting the partnership is to be considered reinstated as it existed prior to the sale down to the time of the final dissolution ; and in the accounting the partner continuing the class of business so purchased by him is not entitled to receive an extra share of the profits derived therefrom upon the ground of contributing thereto a greater amount of time and service than his copartner.
2. Where in an equity suit the auditor finds a certain sum to be due from one party to the other, with interest, a decree confirming the auditor's report is proper which aggregates the principal and interest to the date of the decree, and upon such aggregate sum awards interest thereafter as upon a new principal.
3. In a partnership accounting where one partner, in order that a final decree might be passed in the lower court, conceded a credit $7,500 to the other, instead of $2,624.44, allowed by the auditor, it was *held* under the circumstances the party receiving the credit was not entitled to interest from the dissolution of the partnership.

No. 565.   Submitted May 7, 1896.   Decided May 19, 1896.

HEARING on an appeal by the defendant from a decree in an equity suit for a partnership accounting.   *Affirmed.*

The COURT, in its opinion, stated the case as follows:

This is a proceeding in equity for the settlement of partnership accounts.

Upon a former appeal in the case we affirmed a decree of the Supreme Court of the District of Columbia, which declared void an alleged agreement between the parties and ordered a reference to the auditor of that court for the statement of an account between them. See *Baker* v. *Cummings*, 4 App. D. C. 230. Upon the reference thereafter had the auditor found the sum of $27,916.57 to be due from the appellant to the appellee, with interest on $27,350.09 thereof from September 1, 1889, the date of the final dissolution of the partnership, to July 1, 1895, and on $566.48 thereof from October 30, 1890, when it was shown to have been actually received by the appellant, to July 1, 1895. The date of July 1, 1895, seems to have been adopted by the auditor as the date to which he would calculate the interest, for the reason that it was expected that on or about that day the court would act upon his report, which was filed on June 18, 1895. The total amount of the interest thus calculated was $9,731.13, and this, added to the principal, made a total sum of $37,647.70 due from the appellant to the appellee as of the date of July 1, 1895.

Exceptions were taken to the report by both parties; but at the hearing these were all overruled, and the report was ratified and confirmed. The court then proceeded to enter up a decree in accordance with the report. But it seems that it was about to keep open a certain matter of controversy between the parties, wherein the fees or profits did not appear to have been fully collected by the complainant, who was the person charged with the management of that portion of the partnership business; and thereupon the complainant, being desirous of an absolutely final decree and termination of the litigation, consented in open court to a further allowance of $4,875.56 in favor of the appellant, which, in addition with the amount allowed by the auditor

in the same connection, constituted the total amount of the principal sum or fee claimed therein by the appellant. This further allowance was accordingly deducted from the aggregate amount of the principal and interest, as found by the auditor, and a decree was rendered in favor of the complainant, the appellee here, for the sum of $32,772.14, being the balance of the account, with interest upon such balance from July 1, 1895, until paid, for which execution as at law was awarded. From this decree the defendant has appealed to this court.

*Mr. A. S. Worthington* and *Mr. S. R. Bond* for the appellant:

1. As to appellant's claim for personal services. The agreement of September 6, 1886, was a *de facto* dissolution of the partnership *quoad* these inspector cases; and though it has been decided that it was not a dissolution *de jure*, yet it should be taken into consideration upon settlement of the partnership accounts, and entitles the appellant to a reasonable compensation for services rendered after the *de facto* dissolution. The appellee has appealed to a court of equity, and will be required to do equity.

The general rule is that without an agreement, expressed or implied, one partner is not entitled to compensation for services rendered in the partnership business. We claim that in the present case there was clearly an implied, if not an express, agreement that Mr. Baker should receive compensation for his services. In *Levi* v. *Karrick*, 13 Iowa, 344, there had been a settlement between partners up to a certain date. Suit was brought to set it aside, but the court upheld the settlement and decreed a dissolution and an accounting since the date of the settlement. The auditor, in stating the account, refused to allow compensation to one of the partners for services rendered in the firm business. The court sustained an exception to that part of the auditor's report, and, after stating the general rule, says: "If

an agreement that a partner shall be paid for his services
can be fairly and justly implied from the course of business
between them, he is entitled to compensation." The same
is asserted in *Lewis* v. *Moffatt*, 11 Ill. 400, where the allow-
ance is placed upon the ground of the acquiescence of the
other partner in the work for which compensation is claimed.
See also *Cramer* v. *Bachman*, 68 Mo. 310 ; 2 Lindley on
Partnership, p. 775 and notes ; *Airy* v. *Borham*, 29 Beav.
620 ; *Dumont* v. *Reupprecht*, 38 Ala. 175.

There is as much reason and equity for allowing compen-
sation for services under the circumstances of this case as
there is in the case of a surviving partner, where it is always
allowed if he continues the business and profits accrue.
*Featherstonaugh* v. *Turner*, 25 Beav. 382 ; *Schenkl* v. *Dana*,
118 Mass. 236 ; *Cameron* v. *Francisco*, 26 Ohio, 190. In
the present case Mr. Baker not only continued the business
then on hand, but obtained new and lucrative business, viz.,
inspector cases to the amount of some $65,000.

2. As to the allowance, by the decree, of interest, and
of interest upon interest. It has been the policy of the law
not to aid in the collection of compound interest. *Ben-
schooten* v. *Lawson*, 6 Johns. Ch. 313. At common law
judgments did not draw interest. Freeman on Judgments,
sec. 441 ; *Creuse* v. *Hunter*, 2 Ves. Jr. 157.

In this District there are two statutory provisions as to
interest entering into judgments, viz.: Secs. 713 and 829,
Rev. St. of D. C. The former would seem to apply where
the subject-matter does not, of itself, draw interest. The
latter applies where the interest begins to run from a time
ante-dating the judgment. Judgments in this District are
never entered for an amount which includes the principal,
with interest to date of entry, and making this a new prin-
cipal to bear interest. In this respect equity follows the
law, its decree standing in the place, and being in the nature
of a judgment at law. *Conn.* v. *Jackson*, 1 Johns. Ch. 13 ;
*Hammond* v. *Hammond*, 2 Bland, 306. Upon this point
there is a perfect analogy between the case at bar and that

of *Spalding* v. *Mason*, 161 U. S. 375. There certainly is no law, equity or reason why interest should be compounded in the case at bar, and not in the case last referred to. On the contrary, we claim that by reason of the facts in this case, especially the acquiescence of Cummings in Baker's conducting the business as his own, doing the work and defraying the expenses involved therein, without claim or demand by Cummings that the proceeds should be divided with him until he filed his bill in this case in February, 1890, the equities are strongly against the harsh exaction of compound interest.

*Mr. Franklin H. Mackey* and *Mr. H. O. Claughton* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

There are eight assignments of error. Six of them, it is conceded, were made upon the former appeal, in which they were decided adversely to the appellant. By their renewal here it was not sought to renew the discussion of them, but only, it seems, to preserve them for another tribunal. Only the seventh and eighth assignments were argued at this hearing. By comparison of these assignments with the seven exceptions taken by the appellant to the auditor's report, it will be seen that several of these exceptions have been waived or abandoned.

By the exceptions here insisted upon and the assignments of error thereupon based, two questions are raised: 1st. Whether the appellant is entitled to compensation for his personal services in the prosecution of certain claims constituting part of the partnership business and comprising the most important element in the accounting between the parties; and, 2d. Whether it was proper to allow interest in the decree from July 1, 1895, on the aggregate balance of principal and interest found by the auditor to be due on that day from the appellant to the appellee.

1. With reference to the first question, the auditor in his report has well stated the law and the facts as follows:

"A claim was presented by the defendant for compensation for personal services in obtaining, prosecuting, and collecting these inspector claims on the basis of the difference between one-half and one-third of the net fees, which claim was subsequently amended by the substitution of a claim for personal services in obtaining, prosecuting and collecting inspector cases subsequent to September 6, 1886, the amount so claimed being forty-two thousand seven hundred dollars, and against the objection of the plaintiff's solicitors I received evidence touching the extent and character of the said services as well as of their value, which testimony is returned with this report. This claim is presented and urged upon the ground that the decree annulling the sale of September 6, 1886, does not restore the status of the partnership as to the inspector cases, but only entitles the plaintiff to an equitable portion of the fees realized in said cases; and that, in the ascertainment of that portion, the extra services rendered by the defendant in procuring, prosecuting and collecting these claims after the date of said sale and assignment and rendered in the belief that the plaintiff had no further interest in the said claims should be compensated for, especially as that belief was apparently acquiesced in by the plaintiff during the entire period. Cases are cited in which extra compensation has been allowed by courts to a surviving or remaining partner for services rendered in continuing and conducting the partnership business after the death or withdrawal of his copartner, but each of these cases is that of an absolute dissolution of the partnership relation. In this case, in my judgment, the decree of the court annulling the assignment or sale has the effect of reinstating the partnership as it existed prior to that sale, as to the inspector cases, and to continue that partnership until the complete or general dissolution, in September, 1889. In this view of the case we must treat this claim of the defendant as that of one mem-

ber of an active, existing partnership for an extra share of the profits realized from the joint business, on the ground of contributing to that business a greater amount of time and service than his copartner, a claim which cannot be maintained under any authority of text-writers or adjudicated cases, so far as my inquiry extends. I have therefore to exclude this claim from allowance in my account."

The auditor was undoubtedly right in his conclusion; and the court below very properly affirmed his finding. Any different conclusion would have allowed the appellant to benefit by his own wrong, inasmuch as the pretended sale and transfer to him of September 6, 1886, was his own wrongful act. Exceptional cases there are, of course, in which a partner might justly be allowed extraordinary compensation for his personal services; but no such exceptional case is here presented. The inspector cases, so called, seem to have constituted a portion of the partnership business to which the special attention of the appellant was to be given in any event; and he seems to have done no more in regard to them after the illegal transaction of September 6, 1886, than it was his duty to do if that transaction had never been attempted.

Comment on the extravagant character of a claim of $42,700 as a compensation for personal services in the collection of the sum of $97,820.14, is somewhat precluded by the admission of counsel in argument that they do not seriously contend for that amount, but only that the appellant should be allowed to go before the auditor for *some* compensation for his personal services. We think the auditor and the court below were entirely right in declining to recognize any claim whatever to compensation in the premises.

2. The question in regard to the allowance of interest has been more earnestly and with more plausibility argued than that of compensation for personal services. And this question is not entirely free from difficulty. But it seems to us that we are compelled to follow in this regard the

rule laid down by the Supreme Court of the United States in the case of *Stuart* v. *Gay,* 127 U. S. 518, 531, where that court, by Mr. Justice MATTHEWS, said : "The question, however, still recurs whether the rule for computing interest on the debts as the basis of distribution adopted by the court in its decree of January 5, 1884, is correct as a matter of law. On this point, there is no reason for doubt. The decree of sale, as we have already stated, contained no finding of the amount of the indebtedness, nor of the persons to whom it was owing, and no order for its payment as a condition of redeeming the property from the necessity of sale. But the report of the master of April 21, 1876, contained a full and carefully prepared detail of all the items constituting the indebtedness, with a list of the creditors, a classification according to the order of priority in the matter of lien, and a calculation of interest to October 15, 1875, upon all debts except those embraced in class No. 1, in respect to which special provision was subsequently made showing the total amount then due to each creditor. It is not stated anywhere in the record why the date of October 15, 1875, was selected by the master as a place of rest in the calculation of interest, but it must have been taken as the most convenient day for calculations in reference to closing the report, which evidently required considerable time for its preparation. If the calculation had been made as of the date of the decree for sale, with a view to the insertion therein of the amounts due to the several creditors, on payment of which the sale might be averted, the interest would have been brought down most properly to that date and added to the principal to constitute the whole sum then payable. If not paid at that time the aggregate of principal and interest thus combined would have constituted the new principal, which, according to the uniform practice of the court, would bear interest from that date. In that case there could have been no complaint made against compounding interest. We think a similar effect must be given to the decree of the court con-

firming the master's report made April 28, 1876.    It substantially declared the amount due October 15, 1875, as consisting of the principal sums and interests to that date added for the purpose of the sale and distribution.    * * * The amounts to be found due necessarily embraced the principal sum with the accrued interest up to a fixed date ; and from that period the aggregate became the sum of the debt, the whole of which thenceforth properly carried interest."

The case of *Stuart* v. *Gay*, went up on appeal from the Circuit Court of the United States for the State of West Virginia ; but it does not appear that the statute law of that State had any bearing upon the decision, or that " the uniform practice of the court," referred to in the opinion, meant anything else than the practice of the courts of the United States sitting as courts of equity.

To the same effect is the case of *National Bank of the Commonwealth* v. *Mechanics' National Bank*, 94 U. S. 437 ; *Connecticut* v. *Jackson*, 1 Johns. Ch. 13.

This was also the rule and the practice of the court of chancery of Maryland (*Hammond* v. *Hammond*, 2 Bland's Chan. Rep. 306, 371–380) ; although it should be stated that in that State the rule of the common law, or rather of the statutory law in regard to judgments in common law cases, was and yet remains the same as Mr. Chancellor BLAND states the rule to be in equity.

The appellant's allegations of error, however, is based upon the fact that in the District of Columbia the statutory enactment in regard to interest on judgments at common law, to the analogy of which courts of equity would generally conform, is somewhat different from the existing law of Maryland, and probably from the laws of most of the States of the Union.    This enactment, which is section 829 of the Revised Statutes of the United States for the District of Columbia, and which is taken from the act of Congress of June 24, 1812 (2 Stat. 756), provides that " upon all judgments rendered on the common law side of the court

in actions founded upon contracts, interest at the rate of six per centum per annum shall be awarded on the principal sum due until the judgment shall be satisfied, and the amount which is to bear interest and the time from which it is to be paid, shall be ascertained by the verdict of the jury sworn in the case.'' And this provision has been construed in practice to forbid the compounding of principal and accrued interest in judgments and the awarding of interest on the aggregate amount then ascertained to be due.

But besides the fact that this statute is by its express terms restricted in its application to certain suits at common law, it seems never to have been understood prior to the year 1891 to have been intended in any manner to influence the practice of courts of equity, which, anterior to the year 1891, seems to have been entirely conformable to that stated in the case of *Hammond* v. *Hammond, supra,* as obtaining in Maryland, and which was inherited by us from that State. In fact, another act of Congress, that of April 22, 1870 (16 Stat. 91), incorporated into the Revised Statutes for the District of Columbia as section 713, would seem to be meaningless in some respects unless it were taken as confirming the previously existing practice in equity. That act provides that '' the rate of interest on judgments or decrees, and upon the loan or forbearance of any money, goods or things in action, shall continue to be six dollars upon one hundred dollars for one year, &c.''

It is true that, in the case of *Washington and Georgetown R. R. Co.* v. *Harmon's Administrator,* 147 U. S. 571, the Supreme Court of the United States held that this act did not give interest on judgments where none existed before its enactment. But the act may, nevertheless, be properly construed to sanction and confirm the practice of equity to award interest upon its decrees, when those decrees already awarded an aggregate sum composed of principal and interest to the date of the decree or to some previous fixed date. And it seems to us that the act must be taken to negative any inference that might be drawn from section 829 and the maxim that equity should follow the law.

To the contrary is cited the case of *Spalding* v. *Mason*, decided by the Supreme Court of the District of Columbia in general term on July 10, 1891, and by the Supreme Court of the United States on appeal, at its present term, on March 2, 1896. In that case the special term of the Supreme Court of the District had done what it did in the case now before us ; that is, it aggregated the principal and interest of an indebtedness to the date of the decree, or the date of the ratification of the auditor's report in the case ; and then upon that aggregate sum awarded interest thereafter as upon a new principal. The general term modified that decree, so as to award the complainant only the original principal, with interest thereon from the time at which such original principal should have been paid. The Supreme Court of the United States affirmed the decree of the general term with some modification that does not affect the question here involved.

But we do not understand the final decision in that case to have touched at all the question now before us. It is true that the decision of the general term is directly in point. But the modification made of the original decree by the general term was in favor of the appellant and defendant Spalding ; and as Spalding was again the appellant to the Supreme Court of the United States, and as the other party (Mason) did not appeal, the question of the modification made by the general term was not open for discussion by that court, and is not touched upon in the opinion.

It seems to us that the general rule laid down in the case of *Stuart* v. *Gay* remains unaffected, and that until that rule is modified for this District by the same high tribunal which announced it, we are bound by its terms.

3. In the eighth assignment of error is presumed to be involved another contention advanced on behalf of the appellant, to the effect that, on the sum of $4,875.56, agreed in open court at the time of the hearing of the case to be allowed by the appellee to the appellant, there should have been also an allowance of interest from the time of the dis-

solution of the partnership, September 1, 1889.   This contention seems to us to be without merit.

Among the partnership assets was adjudged to be the amount received, or to be received, by the appellee Cummings for his commissions as the assignee of the insolvent firm of H. D. Cooke & Company.   It was strenuously contended on behalf of Cummings that these commissions should not be regarded as part of the partnership assets ; but that contention was subsequently waived by the action of Cummings, although it was made the subject of the one exception taken by him to the auditor's report.   It was conceded by him in the decree now appealed from by Baker that these commissions might properly go into the accounting.

It does not appear from the record that the appellee has actually received any commissions in the premises, but only that he yet holds some of the assets of the estate of H. D. Cooke & Co. as security for their payment.   It appears, however, that he might have collected them, if he had chosen to devote to their satisfaction some of the funds realized which he paid out to the creditors of the estate ; and the auditor has accordingly charged him in the account with these commissions as if they had been actually received by him.   The assets which passed through his hands amounted to $104,977.71.   On this sum he was entitled by the deed of assignment to commissions at the rate of five per centum, which amounted to $5,248.88.   With one-half of this, or the sum of $2,624.44, he was charged by the auditor in the accounting ; and against his exception, as already stated, this was ratified and confirmed by the court.

But in his testimony in the case the appellee had made this statement :   "The sum that I had expected to charge H. D. Cooke & Co. for services in the assigneeship was $15,000, which was to pay for services and the commissions on the collections and payments ; that sum was fixed by me at that amount on the advice of Mr. John C. Bullitt, of Philadelphia, who thought it was a reasonable amount."

And in consequence of this statement, and of the expectation that the entire charge of $15,000 might ultimately be realized or received by the appellee, the appellant claimed to be entitled to a credit of $7,500 against the appellee, instead of $2,624.44, as found by the auditor. The court below, it seems, was about to formulate the decree so as that it might be left open to the appellant to apply to the court whenever and if ever any balance of the anticipated fee of $15,000 should be realized by the appellee. But the appellee, as we are told, rather than have the decree remain open, agreed to the allowance to the appellant of the further sum of $4,875.56, required, with the allowance made by the auditor, to make up the whole sum of $7,500 claimed by the appellant. And accordingly, this further allowance was made in the decree. The appellant, however, is not satisfied with the allowance, without interest upon it from the date of the dissolution of the partnership. He had been allowed interest on the $2,624.44.

The appellant's claim in this regard we consider to be wholly without merit. It is conceded that the appellee has not collected the $4,875.56. It is not shown that he is entitled to it, or that he should have collected it. From this record there is no just ground whatever for awarding that amount to the appellant. It may be that he would ultimately become entitled to it, but only from the time that it would be or should be received by the appellee; and from that time only would it bear interest, if the appellee failed to account promptly for it. Payment of the amount at present gives him more than he could by any possibility be entitled to in the future upon the basis of his claim.

We do not think that there is any error in the decree appealed from, and we must accordingly *affirm that decree, with costs. And it is so ordered.*