## CALHOUN COUNTY, FLA., v. ROBERTS.
### No. 10511.

Circuit Court of Appeals, Fifth Circuit.
July 21, 1943.

For prior opinion, see 136 F.2d 59.

Julius F. Parker, Millard Caldwell, and Ben A. Meginniss, all of Tallahassee, Fla., and Marion B. Knight, of Blountstown, Fla., for appellant.

Luther W. Cobbey and John W. Bull, both of Tampa, Fla., for appellee.

Before SIBLEY, McCORD, and WALLER, Circuit Judges.

PER CURIAM.

The United States, by the District Attorney, who avers himself authorized by the Attorney General, moves for a rehearing and modification of our opinion in so far as it permits enquiry into the source of the Construction Fund balance on hand

and its appropriation to the discharge of the claim of appellee Roberts. The contention presented is that the United States has an interest in said fund, and in the trial court the District Attorney was admitted to appear to protect that interest, and the fund was held not liable to pay the claim of Roberts; that Calhoun County alone appealed against the allowance of the claim against it, that Roberts took no appeal, gave the United States no notice of a purpose to seek further to subject the fund, and made no such contention before this Court; and that this Court is without authority to set aside that part of the decree which relates to the fund and to order further enquiry.

■ We doubt whether the United States is so far a party as to be entitled of right to move for a rehearing. It cannot be made a party so as to be bound by a judgment unless a law authorizes it. State of Minnesota v. United States, 305 U.S. 382, 388, 59 S.Ct. 292, 83 L.Ed. 235; Munro v. United States, 303 U.S. 36, 41, 58 S. Ct. 421, 82 L.Ed. 633. But a statute, R.S. § 359, 5 U.S.C.A. § 309, provides that "The Attorney General may, whenever he deems it for the interest of the United States, either in person conduct and argue any case in any court of the United States in which the United States is interested, or may direct the Solicitor General or any officer of the Department of Justice to do so." See, also, R.S. § 367, 5 U.S.C.A. § 316. It appears from a certified copy now filed that this is in fact what was done in the court below, the District Attorney being allowed to appear to suggest the interest of the United States, rather than the United States intervening as a party. The courts have always been ready to permit such suggestion and assistance from the Attorney General when the United States was not or could not be a party. In the Schooner Exchange, 7 Cranch. 116, 117, 3 L.Ed. 287, the foreign relations of the United States were involved, and the United States Attorney was allowed to appear, and really conducted the defense of the cause. In State of Florida v. State of Georgia, 17 How. 478, 15 L.Ed. 181, the United States had an interest in land affected by the boundary which was in dispute between the two States, and on full deliberation the Attorney General was allowed not only to appear and assist the court by argument, but to introduce evidence and examine the witnesses, yet without making the United States a party or subjecting it to judgment. So in Stanley v. Schwalby, 147 U.S. 508, 13 S.Ct. 418, 37 L.Ed. 259, where officers of the United States were sued for land which was occupied by them for the United States, the District Attorney was held entitled to defend the case. Many other instances might be cited. We will treat this motion for rehearing as a continuation of the appearance of the Attorney General by his subordinate, rather than a new one by the United States as a party. We welcome any assistance to a correct decision.

■ But the appearance is in order to suggest and protect the interests of the United States and not to aid or assist either litigant in the case. Even in a formal suit by the United States to cancel its land patent, if it appears that the object is not to protect an interest of the United States but to aid a private claimant, the suit should fail. United States v. San Jacinto Tin Co., 125 U.S. 273, 8 S.Ct. 850, 31 L. Ed. 747. In the present case, if the motion for rehearing is not to protect a real interest of the United States, or if it proposes to raise technical objections to the doing of equity and justice, it ought not to be allowed to prevail. It appears from the motion and its exhibits that the last money raised for the construction of the bridge was from the sale of $75,000 of additional bonds, so that it is likely the balance of the construction fund is the proceeds of those bonds; and that while all the bonds were at first bought by the Government, "said bonds have since been sold by the Government to the Reconstruction Finance Corporation, and by it in turn were sold generally to the public." Now the Construction Fund, under the agreement establishing it, was to be used for the construction of the bridge, and after all costs approved by the Public Works Administration were paid, the balance was to constitute a Bond Fund, and be used to retire bonds if the United States then held any of them, and if not, to pay interest on the bonds. The United States owns no bonds, so the contention now is that the balance is pledged to pay interest to the present holders of the bonds. It is not suggested that the United States is bound in any manner to the present bondholders. The security for the bonds provided by the special Act authorizing them, consists in the bridge and its tolls. The answer of Roberts to the District Attorney's suggestion of in-

terest in the court below asserts: "None of said bonds is in default; there is no principal or interest past due, and the payment of said bonds is amply financed by virtue of a lease of said bridge to the State Road Department of the State of Florida." This is probably true. We are of opinion that it is not made to appear that the United States has any longer a real interest in the Bond Fund.

We are also of opinion that the technical objection to the right of this court to authorize further examination into the status of the Bond Fund ought not to prevail. Neither party so objects. The appellee was content with the decree establishing his claim and finding the County liable to pay it. He did not cross appeal. The County appealed from the whole decree attacking both the establishment of the claim and its liability to pay it. The district judge, in his opinion and findings, after establishing the claim as one which the County was authorized by the special bridge Act to create, and which by consequence the Works Progress Administration could not reduce, held the County liable to pay the balance due to Roberts. We think the decree so reached is in essence a single one, and its whole basis and consequences are properly before us. We have concluded that the Special Act intended that the whole cost of the bridge, including the engineering fee, was to be paid out of the bond proceeds, without liability on the County, the County's only connection with the engineering fee being to contract about it; that the County had no authority to agree to any reduction of the fee by submitting it afterwards to the approval of the Public Works Administration, and no authority, in the absence of waiver or estoppel by Roberts, to agree to a diversion of the bond proceeds from payment of bridge costs to payment of principal or interest on bonds, so long as any bridge costs are unpaid. The agreement creating the Construction Fund does not really contemplate any such diversion. According to it, all costs of constructing the bridge are first to be paid. The real question is whether the amount of this engineering fee is controlled by the County's contract or the Administration's refusal to approve it. We think that, so far as the money granted by the United States is concerned, the grantor could attach any conditions it chose to its expenditure. As to the bond proceeds, this is not true, but such proceeds must be used as the Act authorizing the bonds prescribes.

█ We acknowledge the general rule that a cross appeal or cross certiorari is necessary to enable an appellee or respondent in certiorari to ask the appellate court to reverse the part of a decree which is unfavorable to him. Morley Construction Co. v. Maryland Casualty Co., 300 U. S. 185, 57 S.Ct. 325, 81 L.Ed. 593. The rule was applied even to an admiralty decree, the appeal from which is a de novo trial, in The Maria Martin (Martin v. Northern Transportation Co.), 12 Wall. 31, 20 L.Ed. 251. But in another case in admiralty, Langnes v. Green, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520, by way of considered dictum, it was declared that the rule is one of the practice generally followed, limiting the rights of litigants, but not a restriction on the power of the appellate court to see that justice is done. We are reversing the conclusion of law of the district judge that the recourse is against the County and we esteem it necessary to justice to reopen his conclusion of law that there was no recourse against any bond proceeds in the balance of the Construction Fund. We act on our own motion, and not at the instance of appellee. We have disturbed no fact finding of the district court (as was done in the Morley Construction Company case), but differing only on the law, we propose to apply in all its consequences the law as we see it. We hold we have the power, without cross appeal, to do this.

Motion for rehearing denied.

McCORD, Circuit Judge (dissenting in part).

I concurred in the original opinion's reversal of the general judgment against Calhoun County, but I think the court went too far in allowing inquiry into the source of the funds on deposit in the Atlantic National Bank of Jacksonville to "determine whether such proceeds are subject to be applied toward the payment of the indebtedness found by the Court below to be due appellee." A reading of the record convinces me that the parties intended and clearly understood that the engineering fees would be limited to an amount which P. W. A. approved. The engineering company, which was fully familiar with such projects, was informed that fees for en-

gineering services were "not to exceed, in any event, 7½% of the construction cost of the project". It accepted payment on this basis and in my opinion waived any rights it may have had to demand more, and by its conduct estopped itself to recover more than it has received. I think this court should have reversed the general judgment against the County and held that the engineering company has received all to which it is entitled.