TINDALL et al. v. WESLEY.

(Circuit Court of Appeals, Fourth Circuit. February 5, 1895.)

No. 96.

1. CONSTITUTIONAL LAW—SUIT AGAINST STATE.

The state of South Carolina was the owner of certain real estate, which, under a statute of the state, was in the care and custody of the secretary of state, and was held by him, subject to the directions of the commissioners of the sinking fund. Pursuant to directions of such commissioners, the real estate was sold at auction to one A., acting for the plaintiff, who complied with the terms of sale, and received a deed from the commissioners of the sinking fund. A. afterwards conveyed the property to plaintiff, who made a demand for possession upon the secretary of state and a keeper, who had actual charge of the property, under direction of the secretary of state, the property being at the time partly in the occupation of certain state officers; and, being refused possession, brought an action of ejectment against the secretary of state and the keeper. *Held*, that such action was not a suit against the state. U. S. v. Lee, 1 Sup. Ct. 240, 106 U. S. 196, and Stanley v. Schwalby, 13 Sup. Ct. 418, 147 U. S. 508, followed.

2. EVIDENCE—RELEVANCY—EJECTMENT.

The terms of sale of the property provided that one-third of the purchase price should be paid in cash and the balance secured by bond and mortgage, which should be payable at any time, at the option of the purchaser. A. had paid the one-third in cash, given his bond and mortgage, and received a deed of the property. Upon cross-examination of a witness on the trial of the action of ejectment, defendants attempted to show that the purchase was made for the purpose of raising an issue as to the validity of a tender of certain depreciated state scrip, and that such scrip had been tendered in payment of the bond and mortgage. *Held*, that such evidence was irrelevant, and was properly excluded.

In Error to the Circuit Court of the United States for the District of South Carolina.

This was an action of ejectment by Edward B. Wesley against J. E. Tindall and J. R. Boyles to recover possession of certain real estate in the city of Columbia, S. C. Upon the trial in the circuit court, plaintiff recovered judgment. Defendants bring error.

On the 16th of February, 1892, the plaintiff below, Edward B. Wesley, through a trustee, purchased from the commissioners of the sinking fund of

the state of South Carolina the lot of ground in the city of Columbia on which stands the building known as "Agricultural Hall." The property was sold at public auction, and the purchase price was $16,165. The state of South Carolina had been the owner, and this sale was made in pursuance of an act of her general assembly. The purchase was made for the plaintiff below by one J. W. Alexander, as his trustee. Alexander fully complied with the terms of sale by paying to the state treasurer, W. T. C. Bates, one-third of the purchase money, and executing to him his bond and a mortgage of the premises for the residue of the stipulated price, and received a deed for the property in due form, executed by the commissioners of the sinking fund of the state, and delivered by Bates, the state treasurer. In the advertisement of sale, in the bond taken for the deferred installments of the purchase money, and in the mortgage securing them, leave was given the purchaser to anticipate the deferred payments at his pleasure. The deed of conveyance recites that it was made by the commissioners of the sinking fund, by direction and appointment of the plaintiff below, to J. W. Alexander, to hold the same in trust for the use of the plaintiff below, his heirs and assigns forever, and to permit the cestui qui trust to have and possess the same, and to enjoy the profits, and in trust to convey the same to him, his heirs and assigns, on request, or to such person as he might direct and appoint. Afterwards, namely, on the 11th day of February, 1893, Alexander did, upon request, convey the lot and premises in fee simple to him, Edward B. Wesley, who was a citizen of the state of New York. On the 13th day of February, 1893, this suit was brought. The suit is by complaint, and is, in South Carolina, a statutory action, equivalent to and a substitute for the common-law action of ejectment. One of the provisions of the statute law of South Carolina is as follows: "The secretary of state shall take charge of all the property of the state, the care and custody of which is not otherwise provided for by law. He shall hold the same subject to the directions and instructions of the commissioners of the sinking fund." There was no provision of law for other custody of the subject of this suit than that of the secretary of state, J. E. Tindall. The immediate custody of the building was in a watchman,—J. R. Boyles,—appointed by Tindall, whose duty it was to "watch, guard, and take care of the premises." He is one of the defendants below. The complaint avers that the plaintiff below was a citizen of New York, sets up his title to the premises in dispute by describing his purchase from the commissioners of the sinking fund, and the deeds conveying title to him, which gave him the right of possession; and complains that the defendants below, Tindall and Boyles, wrongfully entered into the premises and ousted him, and have been in possession since his purchase on the 20th of February, 1892, and still are withholding the same from him.

The defendant below Tindall, for his first answer, denies each and every allegation of the complainant. For his second answer he says that on the 20th of February, 1892, he was, and has since continued to be and is, secretary of the state of South Carolina; that the premises described in the complaint were and are the property of and in the possession of the said state, in actual public use. For his third answer he says that he has no right, title, interest, or estate in the said premises of any kind whatever, but that the same are in his custody as secretary of state. The answer of Boyles is similar to that of Tindall, averring that he is in the employment of Tindall as secretary of state, has no title in the premises, and is engaged only in watching, guarding, and taking care of the premises. The state of South Carolina is not a party to the suit in any form. She did not come into court to make suggestion of her title to the premises in dispute, and for that purpose only, as was done in Kaufman v. Lee, 1 Sup. Ct. 240. She left her relations to the property to be gathered exclusively from the pleadings and the evidence.

Among other testimony taken at the trial was the following, given by W. H. Lyles, one of the counsel for the plaintiff below, which refers to occurrences on the morning of the 13th day of February, 1893, the day on which this suit was brought, and before the complaint was filed: "Question by the Court: The transaction of the sale had been completed? A. Yes, we had taken the formal delivery of the deed, and had delivered the bond and mortgage, and taken the receipt, put it in our pocket, and went out of the room; then came back, and told Dr. Bates [treasurer of the state] that we had the

privilege of anticipating the payment. By counsel for the plaintiff below: Q. State again the conversation you had with Mr. Tindall? A. On the day this action was commenced, before we put the papers in the hands of the deputy marshal for service, I went down to the building itself. I found Mr. Boyles, the defendant, in possession of the building, and I told· him I had come down to demand possession of the building. He told me he was there in the custody of the building, under the instructions of the secretary of state, and that he was instructed not to give up the possession of the building to me, and I would have to see the secretary of state. I went immediately to his office, having had some trouble in the first case about the matter, and I told him of my conversation and Mr. Boyles' statement to me that he was holding the property under the instructions of the secretary of state. He said I had stated the matter correctly; that he was instructed by the commissioners of the sinking fund to hold that property as the property of the state of South Carolina, and he couldn't give the possession of the property to me; that he held it as agent of the board of the sinking fund commissioners of the state of South Carolina." During the cross-examination of W. H. Lyles, one of the witnesses and one of the counsel for the plaintiff below, the following proceedings took place: "Q. You say you took the deed and went out of the office? A. Yes. Q. You came back almost immediately? A. Came back within the space of 3 or 4 minutes. Q. What then took place? I want to know what occurred between you and Mr. Muller [Lyles' partner] on the one hand, and Dr. Bates [state treasurer] on the other, when you went out of the room and immediately returned? (The court directs the jury to withdraw.) Q. You and Mr. Muller went out of the state treasurer's office, and almost immediately returned. Now, what occurred between the state treasurer on the one hand and Mr. Muller and yourself on the other? A. We returned within five minutes,—I think within two minutes. We called the state treasurer's attention to the fact that the bond which had been delivered by us for Alexander contained a clause which authorized him to anticipate it at any time; and we told him, on behalf of Mr. Alexander, we desired to pay that bond and mortgage immediately. We then drew out the revenue bond scrip, known as the 'Blue Ridge Railroad Bond Scrip,' which we counted out to the amount of a few cents or dollars in excess of the amount due on the bond and mortgage, allowing interest on the bond and mortgage from its date up to the date of this transaction, and we told Dr. Bates we tendered that in payment of the bond and mortgage. We demanded no receipt. We demanded nothing. Q. And it was refused? A. Yes, the advertisement was not referred to. Q. Was it not the purpose of the transaction to create an issue in the United States circuit court, in order to test the validity of the revenue bond scrip? Was not that the object of the purchase? A. The object of the purchase from the beginning was to create an issue as to the validity of the revenue bond scrip; but as to the United States circuit court, we were not— Q. Then, when you bought it, you did not intend to pay for it in good money? A. We did, and considered the scrip as good as money. Q. When you made the purchase, you made it with a view of compelling the state to take the deferred payment of it in revenue bond scrip? A. Yes. Q. Did you happen to know whether the revenue bond scrip had any value in the market? A. I don't know. Q. It has not? A. I don't know that it has. Q. Very little, if any? A. Yes. Q. Had Alexander and Wesley had no use for this property, that you know of, except to create the issue to which you have referred? A. That was the sole object for which it was purchased. Mr. Wesley regarded the property as worth the money. and, even if he had to pay, he would not lose the money. Q. Mr. Wesley holds a large block of revenue bond scrip? A. Yes." The court ruled out the foregoing testimony of Lyles relating to the bond scrip taken in the absence of the jury, and the jury were called into court.

At the close of the testimony taken on behalf of the plaintiff below, counsel for defendants entered a motion for a nonsuit. The court ruled as follows: "The object and purpose of this suit is the obtaining possession of a certain tract of land in the city of Columbia. The plaintiff, not being actually in possession of the land, is obliged to show that he has in himself such title as warrants a possession. For that purpose he has introduced testimony that

he holds title under the state, and in the same testimony he offers evidence that he has made demand under that title, was refused upon the ground that the parties were holding by virtue of the state, both parties referring their claim to the same source, and the motion for nonsuit is overruled."

Tindall, one of the defendants, testified, among other things, as follows, speaking of Agricultural Hall: "Q. Was there any one—at the time of the alleged deed to Alexander—was there anybody in that building at that time? A. Yes. Q. Who was there? A. The railroad commissioners had their rooms there, and I had engaged two rooms to Mr. Boyden, editor of a paper, for which he paid $2 a month each, and the weather bureau had their office in the building. I found them there when the building came into my possession, and I did not remove them. They are there yet. Q. Since that time, how is that building used? A. Those same parties I have mentioned are there, and a little later on the dispensary was established in that building. I think that was some time in the spring of last year. Mr. Traxler, who is the state dispenser, has his office there, and liquors belonging to the state."

At the close of the testimony the defendants below entered a motion to dismiss the complaint on the plea to the jurisdiction of the court, founded on their allegation that the premises were the property of and in the possession of the state of South Carolina, in actual public use, at the time of the commencement of the suit; contending that they, Tindall and Boyles, were mere custodians and care takers of the premises, not in possession or having any interest in them, and were not proper parties to the suit, it being in effect a suit against the state of South Carolina. The court below overruled this motion to dismiss, holding that the cause was not, in effect, a suit against the state of South Carolina, that the defendants were proper parties, and that the court had jurisdiction. The case was tried on the 7th of April, 1893, ending in the following verdict of the jury: "We find for the plaintiff the possession of the land in dispute as described in the complaint."

The plaintiffs in error assign as errors:

(1) That the court below erred in excluding the testimony of W. H. Lyles, given on cross-examination, relating to the intention to pay the deferred installments in railroad bond scrip.

(2) That it erred in overruling motion for nonsuit, on the ground that no evidence was given by the plaintiff below to show title in himself by grant from the state, and a source of title common to both plaintiff and defendants.

"And for a second defense:"

(3) That the court erred in overruling motion to dismiss on the ground that the defendants below were mere custodians and care takers of the premises, not in possession nor having any title or interest in them, and that they were the property of the state.

Samuel W. Melton and Osmund W. Buchanan, for plaintiffs in error.

William H. Lyles, of Lyles & Muller, for defendant in error.

Before GOFF, Circuit Judge, and HUGHES and MORRIS, District Judges.

HUGHES, District Judge (after stating the case as above). The first assignment of error in this case relates to the testimony of W. H. Lyles on cross-examination, tending to show that the plaintiff below, Edward B. Wesley, had made the purchase of the premises with the secret intention of paying the deferred installments of the purchase money in a valueless kind of paper issued by the state called "Blue Ridge Railroad Bond Scrip." The court below refused to allow this evidence to go to the jury, and this ruling is assigned as error. The payment of the first installment of the purchase money, the execution of the deed of conveyance to the purchaser, and his counter execution of bond and mortgage for the deferred install-

ments, made the transaction a perfect and complete one to confer title upon the purchaser, and to entitle him to possession of the premises. The suit which he brought for this possession involved no other inquiry than whether his first payment had been made, whether a valid deed of conveyance had been executed, and whether he had further complied with the terms of sale relating to the bond and mortgage for the future installments. What might have been his secret intentions with respect to the deferred payments was a question foreign to his suit for possession of the premises to which he had become entitled, and all evidence in regard to such intentions was properly ruled out.

The second assignment of error, based upon a denial that any evidence had been introduced showing a grant of the premises from the state to the plaintiff below, is waived by the defense, and a consideration of it by us rendered unnecessary.

The third and principal ground assigned as error is a denial of the jurisdiction of the court below to try the cause, because of the allegations in the pleadings that the premises in dispute were, on the date of plaintiff's demand for possession, and have been ever since, the property of the state of South Carolina, in actual public use; that the defendants below were officers of the state, and in custody of the premises only as such, and that they have no right, title, interest, or estate of any kind to or in the said premises. It is well-settled law that a sovereignty cannot be sued except by its own consent. The doctrine applies alike to the government of the United States and to the states themselves, composing the Union. But it is equally well settled that suits may be brought, under special circumstances, for property claimed by a state, and in the possession of individual persons holding for and in the name of the sovereign. There is some confusion in the decisions on this question when they come to define what the special circumstances and conditions are under which the property of a sovereign in possession of agents or officers may be the subject of suits against such persons. In the present case we are saved the task of entering upon a general survey of the decisions on this vexed question that have been rendered in the courts of this and the mother country. The case at bar is practically and in principle all fours with that of U. S. v. Lee, or Kaufman v. Lee, 106 U. S. 196, 1 Sup. Ct. 240, and is ruled by the decision in that case and in Stanley v. Schwalby, 147 U. S. 508, 13 Sup. Ct. 418. The complaint in the case at bar specifically charges that, "the plaintiff being lawfully possessed of the premises, the defendants, on the 20th of February, 1892, wrongfully entered into said premises and ousted plaintiff, and that the defendants are, and ever since have been, and still are, withholding the same from the plaintiff," against his demand. Issue was joined on this allegation, and the verdict was for the plaintiff below, on evidence proving an ouster and tort. The action was, in substance, for trespass and tort, and it is in this respect that the case at bar is all fours with that of Kaufman v. Lee, and ruled by the decision of the supreme court therein. In the case of Stanley v. Schwalby, at page 518, 147 U. S., and page 418, 13 Sup. Ct., the supreme court say:

"It may be accepted as unquestioned that neither the United States nor a state can be sued as defendant in any court in this country without their consent, except, etc. Accordingly, whenever it can be clearly seen that a state is an indispensable party to enable a court, according to the rules which govern its procedure, to grant the relief sought, it will refuse to take jurisdiction. But, in the desire to do that justice which in many cases the courts can see will be defeated by an extreme extension of this principle, they have in some instances gone a long way in holding the state not to be a necessary party, though its interests may be more or less affected by the decision. Among these cases are those where an individual is sued in tort for some act injurious to another in regard to person or property in which his defense is that he has acted under the orders of the government. In those cases he is not sued as an officer of the government, but as an individual, and the court is not ousted of jurisdiction because he asserts the authority of such officer. To make out that defense he must show that his authority was sufficient in law to protect him. In this class of cases is included U. S. v. Lee, where the action of ejectment was held to be in its essential character an action of trespass, with the power in the court to restore the possession to the plaintiff as part of the judgment; and the defendants, Strong and Kaufman, being sued individually as trespassers, set up their authority as officers of the United States, which this court held to be unlawful, and therefore insufficient as a defense."

A case rarely arises in the courts more fully within the terms of a ruling decision than is the case at bar within the meaning and tenor of the language of the supreme court in the case of Stanley v. Schwalby, confirming and explaining the decision in Kaufman v. Lee.

We think there was no error in the action of the court below in entertaining this suit as not a suit against the state of South Carolina, and in giving judgment for the plaintiff below. The judgment of the court below is affirmed.