UNITED STATES of America, Plaintiff,

v.

ALCAN FOIL PRODUCTS, DIVISION OF ALCAN ALUMINUM CORPORATION, Defendant and Third-Party Plaintiff,

v.

ATLANTIC RICHFIELD COMPANY, Third-Party Defendant.

Civ. A. No. 87-0434-L(CS).

United States District Court,
W.D. Kentucky,
at Louisville.

March 15, 1988.

Opinion on Motion for Reconsideration
Sept. 15, 1988.

Richard A. Dennis, Asst. U.S. Atty., Louisville, Ky., Robert Foster, U.S. Dept. of Justice, Lands Div., Environmental Enforcement Section, Washington, D.C., for the U.S.

Lawrence A. Salibra II, Alfred R. Cowger, Jr., Alcan Aluminum Corp., Cleveland, Ohio, for Alcan Foil Products, Div. of Alcan Aluminum Corp.

Marcus P. McGraw, Carolyn M. Brown, Greenebaum Doll & McDonald, Lexington, Ky., for Atlantic Richfield Co.

## MEMORANDUM OPINION

SIMPSON, District Judge.

This is an enforcement action brought by the United States on behalf of the Administrator of the United States Environmental Protection Agency ("EPA") pursuant to 42 U.S.C. §§ 7413(b) and 7420 of the Clean Air Act ("Act"), 42 U.S.C. §§ 7401 *et seq.* In its complaint, the EPA alleges that the defendant, Alcan Foil Products Division ("Alcan"), is producing excessive emissions of volatile organic compounds ("VOCs")[1] in violation of emission standards contained in Regulation 6.29 of the Jefferson County Air Pollution Control District ("JCAPCD").[2] This matter is presently before the Court on motion by Alcan for summary judgment in its favor pursuant to Rule 56, Fed.R.Civ.P.

Interpreting the evidence in a light most favorable to the EPA, the facts may be stated as follows. See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2513 (1986) (citation omitted). Alcan operates a laminating facility in Louisville, Kentucky, that manufactures products which include cigarette package foil liners, electric cable wrap, air conditioner fin stock, label stock, composite can stock and hood stock for frozen food trays. In connection with production at the facility, Alcan operates ten (10) rotogravure printing presses. Each of these printing presses either emits or has the potential to emit VOCs. On March 3, 1986, a revision to the existing KSIP was submitted by the Kentucky Natural Resources and Environmental Protection Cabinet to the EPA on behalf of the JCAPCD pursuant to 42 U.S.C. § 7410. This proposed KSIP revision included an amended version of JCAPCD Regulation 6.29. Under the existing KSIP, VOC emission compliance at the Alcan facility was determined at each particular emission source. That is, if one emission source exceeded the standards established by JCAPCD Regulation 6.29, then Alcan would be in noncompliance. Under the proposed KSIP revision, Alcan's VOC emis-

---

1. VOCs are "air pollutants" as defined by the Act, 42 U.S.C. § 7602(g). JCAPCD Regulation 6.29 requires that VOC emissions by rotogravure presses be kept within certain levels.

2. JCAPCD Regulation 6.29 is a part of the Kentucky State Implementation Plan ("KSIP") originally approved by the EPA in August of 1981 and subsequently revised and reapproved in January of 1984. A State Implementation Plan or SIP is the means whereby a state may implement and maintain National Ambient Air Quality Standards ("NAAQS") promulgated by the EPA within its borders. See 42 U.S.C. §§ 7409 (NAAQS); 7410 (SIPS).

sions would be regulated by consideration of all point sources of the facility together under a "bubble concept" rather than on an individual basis. Under the "bubble concept", the entire facility could meet compliance requirements by offsetting emissions at one source within the plant by over-compliance at another source. The EPA has approved application of this bubble concept in certain instances.[3]

On July 14, 1986, the EPA served notice on Alcan and the JCAPCD that seven (7) rotogravure printing presses were in non-compliance with Regulation 6.29. An inspection of the Louisville plant by the EPA on October 15, 1986, confirmed that VOC emissions from the presses remained excessive and that the emissions violated both Regulation 6.29 and daily emission standards under the proposed KSIP revision.[4] Following the issuance of the notice of noncompliance, Alcan and the EPA met to discuss the alleged violation as well as the proposed KSIP revision. On December 4, 1986, the EPA issued its revised Emission Trading Policy which established uniform procedures and criteria upon which any approval of bubble plans by the EPA would be predicated.[5] On February 18, 1987, the EPA informed Alcan of deficiencies in the JCAPCD's proposed bubble plan and recommended certain revisions that were necessary prior to any approval by the EPA. On July 15, 1987, this action was filed at the request of the EPA. On August 26, 1987, EPA's Regional Administrator signed a proposed rule disapproving the JCAPCD's proposed KSIP revision. To date, the EPA has not formally approved or disapproved of the Regional Administrator's action.

In support of its motion, Alcan relies upon the affidavit of the Director of the JCAPCD to establish that it is in compliance with the proposed KSIP revision and has been since November of 1986. See fn. 4, supra. This opinion is based upon monthly operating emission reports provided since March of 1986 by Alcan to the EPA and the JCAPCD. In addition, Alcan has also provided to both the EPA and JCAPCD, a comprehensive engineering report containing emission data for a two-year baseline period from July of 1985 through June, 1987.[6] On the basis of this information, Alcan relies upon the decision rendered by the Court of Appeals for the Fifth Circuit in *American Cyanamid v. U.S. E.P.A.*, 810 F.2d 493 (5th Cir.1987), in its assertion that summary judgment in its favor is proper. In *American Cyanamid,* the Court held that, when the EPA issues a notice of noncompliance more than four (4) months after a state has submitted a proposed KSIP revision under which the alleged violator is in compliance, then the EPA may not commence a civil action under 42 U.S.C. § 7420 until it rejects the proposed revision. *Id.* at 501.

Despite this Court's order granting the EPA an extension of time to file a response to Alcan's motion for summary judgment, the EPA has chosen not to respond. Rather, the EPA has requested that this Court deny Alcan's motion without prejudice in lieu of further discovery by the EPA pursu-

3. Rice, *EPA Issues Final Emissions Trading Policy Under the Clean Air Act,* EPA Environmental News (1986).

4. By affidavit, Robert T. Offut, Director of the JCAPCD, states that Alcan has been in compliance with the proposed KSIP revision since November of 1986.

5. See 51 Fed.Reg. 43814–43860 (1986) (effective date December 4, 1986).

6. Affidavit of Lawrence Cooke, Manager of Environment, Health, Safety and Security at the Alcan facility since October of 1986. The report prepared by the engineering firm for Alcan entitled "State Implementation Plan Revision" was completed in August of 1987. This report indicates that there is some disagreement between the JCAPCD and the EPA concerning the emission value against which actual emissions at the Alcan facility are compared to determine compliance. The emission value recommended by the EPA is 122.5 tons/year. The JCAPCD has recommended an emission value of 133.9 tons/year and Alcan asserts that 185.0 tons/year is the proper value. This report concludes after conducting a compliance comparison between actual emissions and the 133.9 ton/year value that on an annual basis Alcan complies with the proposed KSIP emission allowance. On a daily basis, wherein the allowable KSIP value is 1046 lbs./day, the Alcan facility meets the criteria on all but six (6) days during the two (2) year baseline period.

ant to Rule 56(f), Fed.R.Civ.P.[7] EPA contends that a genuine issue of material fact exists as to whether Alcan's facility is operating in compliance with the proposed KSIP revision. Because no less than eight (8) months have passed since it filed its complaint, the EPA requests that this Court deny Alcan's motion without prejudice to its refiling after the EPA has had an ample opportunity to obtain meaningful discovery on this issue. In an effort to show that its request is made in good faith, the EPA has submitted the affidavit of its Regional Expert for the Air Compliance Branch wherein he states that, in his opinion, Alcan's facility is in noncompliance with the present JCAPCD Regulation 6.29 as well as with the proposed KSIP revision. Other than this conclusory assertion, the EPA has failed to inform this Court of any specific information that would tend to support this opinion. Moreover, the EPA has also failed to state any reason why the emission data already supplied by Alcan is insufficient.

■ It is the opinion of this Court that whether Alcan's facility is in present compliance with the proposed KSIP revision is a non-issue in this action. EPA's complaint wholly fails to allege that this enforcement action is premised upon any violation of the proposed KSIP revision. This is understandable since the existing KSIP remains the standard against which compliance is measured until the EPA acts upon the revision submitted by the JCAPCD. *American Cyanamid*, 810 F.2d at 495 (citations omitted). It is equally apparent that, since the EPA's notice of noncompliance was served more than four (4) months after the JCAPCD submitted its proposed KSIP revision, it may not commence enforcement proceedings until it acts upon the proposed revision. *Id.* at 501.

The EPA seeks to distinguish *American Cyanamid* from the instant action on the basis that the alleged violator in that case would have complied with Louisiana's SIP on schedule had the EPA approved the revision in four (4) months. The EPA contends that the holding in *American Cyanamid* stands for the proposition that the EPA is not estopped from initiating enforcement proceedings unless the alleged violator proves it is in compliance with the proposed SIP revision. This narrow view of the Court's holding in *American Cyanamid* distorts the whole of the opinion.

In *American Cyanamid*, Circuit Judge Jerre S. Williams aptly stated as follows:

> Where, as here, the state has proposed a revision to its SIP which clearly authorizes local businesses to act in accordance with it without running afoul of the Clean Air Act, the interest of the state itself is deeply involved in the required four month approval or disapproval of the proposed revision. It distorts the statutory scheme to place virtually full emphasis upon the business entity involved as a charged "polluter". The emphasis of the statute, rather, is upon the important role which the state plays in defining authorized emissions.... The issue then is not so much pollution by American Cyanamid but the default of the EPA in carrying out the congressional intent to work in close cooperation with the state in implementing standards and enforcing the Clean Air Act. We emphasize the importance of the EPA acting, not for the benefit of American Cyanamid, but for the benefit of the State of Louisiana which is by statute designated to play a significant cooperating role with the EPA.

*Id.* at 500.

The emphasis, then, is not upon whether Alcan is in compliance with the proposed KSIP revision. Rather, the primary issue is whether the EPA has acted responsibly to avoid a state of regulatory limbo such as exists in this instance. Due to its inaction on the proposed KSIP revision, the EPA may not bring an enforcement action

---

**7.** Rule 56(f), Fed.R.Civ.P., states as follows: Should it appear from the affidavits of a party opposing the motion [for summary judgment] that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

against Alcan under the existing KSIP since Alcan has been operating in reliance upon assurances by the JCAPCD that its emissions are acceptable and in compliance with the proposed KSIP revision. The EPA may not seek to enforce the standards of the proposed KSIP revision since it has failed to take any final action on the proposal. This regulatory quandry is of EPA's own making.

Moreover, the dispute over whether Alcan is in compliance with the proposed KSIP revision is apparently between the EPA and JCAPCD. Alcan has been informed by the JCAPCD that its operation is in compliance. Whether the JCAPCD's assessment of compliance is inaccurate for any reason is an issue that must be resolved between the two regulatory agencies before any enforcement action may be brought against Alcan. Had the EPA definitively ruled on the proposed KSIP revision within the four (4) month period as required, then, at least, the standards for determining non-compliance would be clear and this action could proceed. However, until this is done, no enforcement action is appropriate. Accordingly, Alcan is entitled to summary judgment as a matter of law.

Therefore, because the further discovery sought by the EPA is essentially unnecessary to this action, EPA's motion under Rule 56(f), Fed.R.Civ.P., is denied. See 6–Pt. 2 Moore's Federal Practice ¶ 56.24, 56–1425, 1426 (2d Ed.1987). Furthermore, after consideration of the pleadings filed herein and all admissible evidence of record, summary judgment in favor of Alcan is granted as a matter of law. In ruling on Alcan's motion, this Court expresses no opinion regarding the merits of any claims by the EPA that Alcan is operating in violation of the Clean Air Act.

Separate orders shall accompany this Memorandum Opinion.

## MEMORANDUM OPINION

## ON MOTION FOR RECONSIDERATION

This matter is before the Court on the motion of the United States Environmental Protection Agency ("EPA") for reconsideration of this Court's prior summary judgment ruling. By order dated March 15, 1988, this Court granted summary judgment in favor of defendant, Alcan Foil Products Division of Alcan Aluminum Corporation ("Alcan"), dismissing the EPA's complaint seeking, penalties and injunctive relief for Alcan's alleged violation of the Clean Air Act, 42 U.S.C. §§ 7401 *et seq.* The pertinent facts have already been fully set forth and will not be repeated here.

The Court has considered the authorities submitted in support of and in opposition to the EPA's motion for reconsideration. The Court has given special scrutiny to *United States v. National Steel Corporation,* 767 F.2d 1176 (6th Cir.1985), and, as explained herein, concludes that *National Steel* does not require that this Court vacate its previous order granting summary judgment in Alcan's favor.

In *National Steel,* the EPA sued National Steel for violation of the Federal Clean Air Act. In resolution of that action, as part of a consent decree, National Steel agreed to begin, by August 1, 1981, installation of pollution-control equipment on a furnace at one of its facilities. The consent decree imposed penalties for noncompliance, but permitted National Steel to seek alternative emission reduction options. National Steel sought such an option by seeking a "bubble" plan for the facility at which the offending furnace was located. The consent decree expressly provided that application for a "bubble" would *not* excuse delay in complying with the consent decree deadline. *Id.* at 1179. Apparently in hopes that the bubble would be approved, National Steel did not begin installing the pollution-control equipment the consent decree required. After some delays and extensions of time, on December 10, 1982, the EPA approved the proposed bubble. However, during public comment, the bubble was shown to violate air quality standards. On March 30, 1983, the EPA advised National Steel that it would not grant final approval. In April, 1983, the Justice Department sought enforcement of the consent decree, the requirements of

which National Steel had hoped to avoid by submission of the bubble.

As its defense to the consent-decree enforcement action, National Steel argued that "mixed signals" from the EPA and the EPA's delay in approving the bubble had induced National Steel to forego installation of the required emission control equipment. As a result, argued National Steel, it should not be subject to penalties for failure to comply with the terms of the consent decree. The Sixth Circuit disagreed, reasoning that National Steel had merely lost its gamble that the bubble would be approved. The Sixth Circuit upheld the award of consent-decree penalties against National Steel, subject to a 180–day limitation contained in the consent decree. The Sixth Circuit expressly rejected National Steel's argument that failure of the EPA to approve or disapprove of the bubble within four months of submission excused it from the consent-decree penalties. In rejecting that argument, the Sixth Circuit stated in cursory fashion that the four-month rule applicable to approval of general state plans is not applicable to revisions of state plans. 767 F.2d at 1183, n. 1.

While the *National Steel* footnote suggests that the Clean Air Act does not require the EPA to act on proposed SIP revisions within four months, *National Steel* does not require this Court to reverse its previous summary judgment ruling. First, the consent decree in *National Steel* expressly provided its requirements would not be excused by submission of a bubble proposal; therefore, the question of the proposed bubble's effect on a SIP's enforceability was not before the Court. Accordingly, the footnote is mere dictum. Second, even if the four-month rule does not apply to submitted SIP revisions, the real issue is whether the EPA should be allowed to bring enforcement proceedings against a polluter who has complied with its state's proposed SIP revision, which the EPA may yet approve, but on which the EPA has neglected to act.

For guidance on this issue, this Court has considered the seminal case of *Train v. National Resources Defense Counsel*, 421

U.S. 60, 95 S.Ct. 1470, 14 L.Ed.2d 731 (1975). *Train*, like *National Steel*, does not specifically address the issue of the judicial "limbo" created when a state submits a SIP revision and the EPA takes no action on it. However, *Train* makes it very clear that the primary rule-making role for Clean Air Act standards is allocated to the States, not to the EPA.

The Agency is plainly charged by the Act with the responsibility for setting the national ambient air standards. Just as plainly, however, it is relegated by the Act to a secondary role in the process of determining and enforcing the specific, source-by-source emission limitations which are necessary if the national standards it has set are to be met. Under § 110(a)(2), the Agency is *required* to approve a state plan which provides for the timely attainment and subsequent maintenance of ambient air standards, and which also satisfies that section's other general requirements. The Act gives the Agency no authority to question the wisdom of a State's choices of emission limitations if they are part of a plan which satisfies the standards of § 110(a)(2).... Thus, so long as the ultimate effect of a State's choice of emission limitations is compliance with the national standards for ambient air, the State is at liberty to adopt whatever mix of emission limitations it deems best suited to its particular situation.

... [T]he third paragraph of § 110(a), and the one immediately following the paragraphs which specify that States shall file implementation plans and that the Agency shall approve them if they satisfy certain broad criteria, is the section which *requires* the Agency to "approve any revision of an implementation plan" if it "determines that it meets the requirements" of § 110(a)(2).... [T]his provision applies to *any* revision, ... Agency approval is subject only to the condition that the revised plan satisfy the general requirements applicable to original implementation plans. Far from evincing congressional intent that the Agency assume control of a State's emission limitations mix once its initial plan is

approved, the revision section is to all appearances the mechanism by which the States may obtain approval of their developing policy choices as to the most practicable and desirable methods of restricting total emissions to a level which is consistent with the national ambient air standards.

*Train* at 79–80, 95 S.Ct. at 1481–82 (footnotes omitted).

Allocating to the EPA secondary responsibility recognizes the state's interest in protecting its own citizens, both from air pollution and from unnecessary or unduly restrictive regulations on the operation of its industry and business. The EPA's interest is merely in determining whether the state's regulatory scheme furthers the overall purpose and plan of the Clean Air Act. Delay on the part of the EPA in making that determination should not hamper the state's right and duty to regulate and protect its own citizens as it sees fit. *Accord United States v. General Motors Corp.*, No. 87–2068–MC (D.Mass. May 16, 1988) [available on WESTLAW, 1988 WL 82247].

■ In an effort to balance the state's interest against the EPA's, appellate courts in three federal circuits have concluded that the EPA is required to act on SIP revisions within four months of submission. *See generally, American Cyanamid v. U.S. E.P.A.*, 810 F.2d 493 (5th Cir.1987); *Duquesne Light Co. v. E.P.A.*, 698 F.2d 456 (D.C.Cir.1983); *Council of Commuter Organizations v. Gorsuch*, 683 F.2d 648, 651–52 (2nd Cir.1982) ("CCO # I"). These decisions implicitly recognize the unfairness of imposing penalties on a polluter who complies with a state-proposed SIP revision that the EPA may ultimately approve, because it adequately provides for attainment and maintenance of national air quality standards. To mitigate that unfairness, *American Cyanamid* concluded that the EPA's failure to act on proposed revisions within four months precludes enforcement actions until the EPA rejects the proposed revision; *Duquesne* prohibited the collection of penalties until the EPA rejects the revision; the *Gorsuch* Court expressed concern that it took the EPA years to approve SIP revisions which were supposed to be effective in 1978, *Council of Commuter Organizations v. Thomas*, 799 F.2d 879, 888 (2nd Cir.1986) ("CCO # II").

The unfairness that concerned the Second, Fifth and District of Columbia Circuits, as well as this Court, is ameliorated by simply requiring that the EPA rule on submitted SIP revisions before it begins enforcement proceedings against polluters to which the revisions are applicable. If the EPA approves the revision as meeting the requirements of the original SIP, then compliance with the revision during the pendency of that approval will have furthered the goals of the Clean Air Act, and the question of penalties and enforcement proceedings rightfully becomes moot.

If the EPA rejects the revision, those aggrieved will be entitled to seek judicial review of the EPA's action. In the meantime, the EPA would apparently be free to bring enforcement proceedings for violation of the unrevised SIP.[1] How penalties should be assessed for noncompliance with the approved revision or with the original SIP, if the revision is rejected, is not ripe for decision until the EPA acts on the proposed revision, thereby establishing its right to bring enforcement proceedings. Once that right is established, and it is determined whether revised or unrevised SIP guidelines apply, then the Court can address the question of whether penalties should be imposed for the period the SIP

---

1. *Train* recognizes that right: "Should either [the state or the EPA] determine that granting the variance [under the revision authority of § 110(a)(3) ] would prevent attainment or maintenance of national air standards, the polluter is presumably within his rights in seeking judicial review." *Train*, 421 U.S. at 92, 95 S.Ct. at 1488. This litigation would be on the "polluter's time, not the public's", for during the pendency of the litigation "the original regulations remain in effect ..." *Id.* Implicit in *Train's* logic is the presumption that the EPA will *act* on revision proposals; not even *Train* suggests that the Clean Air Act confers on the EPA power to exercise "pocket vetoes" over state-proposed revisions, by simply failing to take action on them.

revision stood submitted for approval. That answer ought to depend on the equities of each individual case.

Barring enforcement proceedings while the EPA considers a proposed SIP revision comports with Congressional intent that the EPA defer to the state's wisdom in deciding how best to achieve the goals of the Clean Air Act. It also encourages the EPA to rule promptly on revisions submitted to it. Judicial review of any rejection by the EPA will assure that prompt action by the EPA is not hasty or unfounded. *Cf. American Cyanamid* at 499 (recognizing that the *Duquesne* approach of allowance of retroactive penalties may encourage the EPA to reject revisions it should approve). Similarly, if the proposed revision fails to meet the necessary requirements for approval, the risk that "retroactive" penalties might be imposed would discourage polluters from petitioning for revisions which are not good faith efforts to comply with the standards of the Clean Air Act. *Cf. Duquesne* at 472 (polluter could be liable for penalties calculated back to the approval deadline, with interest).

Finally, the EPA argues that "noncomplying sources" who escape penalties or avoid enforcement proceedings because of pending SIP revisions gain "an unfair advantage over those that seek to comply" with the unrevised SIP. This argument disregards the fact that a SIP revision which protects a particular polluter is promulgated by the state, not by the private polluter itself. Unless the state concludes that the revision is warranted, in the interest of the public it serves, the revision will not be submitted to the EPA for approval to begin with. Penalizing those who comply with what a state deems reasonable air-pollution control guidelines is contrary to the spirit and intent of the Clean Air Act, and to the allocation of responsibility the Act contemplates.

The EPA urges this Court to reconsider its refusal to hold its decision on Alcan's summary judgment motion in abeyance under Fed.R.Civ.P. 56(f). The EPA claims it has been unable to get affidavits concerning Alcan's alleged violation of the revised SIP guidelines. However, the present action is not based on noncompliance with the *revised* SIP. Accordingly, affidavits concerning any revised SIP noncompliance are immaterial to the present action, and cannot contain facts essential to justify defendant's opposition to Alcan's motion for summary judgment. Fed.R.Civ.P. 56(f).

For the foregoing reasons, by separate order this Court reaffirms and reiterates its order of March 15, 1988, granting summary judgment in favor of Alcan.