**UNITED STATES of America, Plaintiff–Appellant,**

**v.**

**ALCAN FOIL PRODUCTS DIVISION OF ALCAN ALUMINUM CORPORATION, Defendant and Third–Party Plaintiff–Appellee,**

**Atlantic Richfield Company, Third–Party Defendant.**

**No. 88–6300.**

United States Court of Appeals, Sixth Circuit.

Argued Aug. 3, 1989.

Decided Nov. 21, 1989.

Joseph M. Whittle, U.S. Atty., Richard A. Dennis, Asst. U.S. Atty., Louisville, Ky., Roger J. Marzulla, U.S. Dept. of Justice, Environmental Enforcement Section, Land & Natural Resources Div., David C. Shilton, John T. Stahr (argued), Robert Foster, U.S. Dept. of Justice, Land & Natural Resources Div., Washington, D.C., Alan E. Dion, Asst. Regional Counsel, U.S.E.P.A., Region IV, Atlanta, Ga., for U.S., plaintiff-appellant.

Lawrence A. Salibra, II (argued), Alfred R. Cowger, Jr., Alcan Aluminum Corp.,

Cleveland, Ohio, for Alcan Foil Products Div. of Alcan Aluminum Corp., defendant-appellee.

Carolyn M. Brown, Marcus P. McGraw, Greenebaum, Doll & McDonald, Lexington, Ky., for Atlantic Richfield Co., third-party defendant.

Gaylord Ballard, Air Pollution Control Dist. of Jefferson County, Louisville, Ky., for Air Pollution Control Dist. of Jefferson County, Jefferson County Kentucky (District).

Roy K. Snell, Stites & Harbison, Louisville, Ky., for Cabinet for Economic Development, Com. of Ky. (The "COMMONWEALTH"), amicus curiae.

Before KRUPANSKY and RYAN, Circuit Judges, and LIVELY, Senior Circuit Judge.

LIVELY, Senior Circuit Judge.

This case arose under the Clean Air Act as amended, 42 U.S.C. § 7401 et seq. (the Act). The government brought this enforcement action in the district court pursuant to section 113(a) of the Act, 42 U.S.C. § 7413(a). It alleged that Alcan's Louisville, Kentucky aluminum foil products plant was emitting air pollutants known as volatile organic compounds (VOC), which are precursors in the formation of ozone, in excess of the limits prescribed by Kentucky's state implementation plan (SIP). The complaint prayed for an injunction and damages of $25,000 for each day the defendant is in violation of the Act and the SIP.

In its answer Alcan pled as an affirmative defense that Kentucky had filed with the Environmental Protection Agency (EPA) a proposed revision to its SIP, but that EPA had failed to take action on the proposal, although it was filed more than sixteen months before the government commenced this action. Alcan further alleged that it was in compliance with the standards of the proposed revision. Alcan filed a motion for summary judgment, which the district court granted. The district court held that the Act requires EPA to act on proposed SIP revisions within four months. *United States v. Alcan Foil*

*Products Division*, 694 F.Supp. 1280 (W.D. Ky.1988). On motion for reconsideration, the district court held that even if the "four-month rule" does not apply, EPA should not be permitted to bring an enforcement action against a polluter who is in compliance with a proposed revised SIP, which might be approved eventually but upon which the EPA has failed to act. The district court dismissed the action. We affirm in part and reverse in part.

I.

Under the Act the Administrator of EPA is required to establish national ambient air quality standards (NAAQS). As the first step in the process EPA publishes lists identifying emissions that are reasonably believed to endanger public health and welfare. EPA then issues air quality criteria for each listed pollutant. 42 U.S.C. § 7408(a). Finally, EPA, following statutory procedures and timetables, promulgates NAAQS for each listed pollutant. These NAAQS limit the emissions of each pollutant to a level consistent with the achievement and maintenance of the desired air quality. 42 U.S.C. § 7409.

After it has established the NAAQS for each pollutant, the role of EPA is secondary and that of the states becomes primary. *Train v. Natural Resources Defense Council, Inc.*, 421 U.S. 60, 79, 95 S.Ct. 1470, 1481, 43 L.Ed.2d 731 (1975). This is made clear by section 107(a) of the Act, 42 U.S.C. § 7407(a), which provides:

Each State shall have the primary responsibility for assuring air quality within the entire geographic area comprising such State by submitting an implementation plan for such State which will specify the manner in which national primary and secondary ambient air quality standards will be achieved and maintained within each air quality control region in such State.

Congress amended the Act in 1970, adding section 110, 42 U.S.C. § 7410. Section 110 provides for the promulgation and revision of SIPs. Section 110(a) requires each state to adopt and submit to EPA an SIP within nine months after EPA has estab-

lished primary and secondary NAAQS for any pollutant. The SIP must "provide[ ] for implementation, maintenance, and enforcement of" each standard in each air quality control region within the state. 42 U.S.C. § 7410(a)(1). The Act contains many time restrictions. Section 110(a)(2) applies to original SIPs and provides that EPA "shall, within four months after the date required for submission of a plan under paragraph (1), approve or disapprove such plan or any portion thereof." EPA must approve a plan if it satisfies the procedural and substantive requisites set forth in subparagraphs (A) through (K). Section 110(a)(3) deals with SIP revisions. Subsection (A) provides:

> The Administrator shall approve any revision of an implementation plan applicable to an air quality control region if he determines that it meets the requirements of paragraph (2) and has been adopted by the State after reasonable notice and public hearings.

## II.

Louisville is in the Kentucky air pollution control region that is designated the Air Pollution Control District of Jefferson County (the Region). Region Regulations 6.29, a part of the Kentucky SIP, established the emissions standards for the VOCs emitted by Alcan's rotogravure printing presses. Under the existing SIP, emission compliance at the Alcan plant is determined at each emission source. Thus, if the emissions from one press exceed the standards, the entire plant is out of compliance.

### A.

Alcan prepared a proposed revision to Regulation 6.29, and after approval by the Region, Kentucky submitted the proposed revision to EPA on March 3, 1986. The proposed revision would adopt the "bubble concept" for determining compliance rather than the existing method of determining compliance at each individual emissions source. Under the bubble concept the total emissions of a given pollutant from a plant or area, over a prescribed period, are calcu-

lated to determine compliance or noncompliance. Thus, a bubble permits a "super-complying source" to offset an "undercomplying source," thereby enabling the entire plant to meet applicable emissions standards. The proposed revision used a thirty-day averaging period. As proposed, if the average of Alcan's Louisville VOC emissions over a thirty-day period met the standards under the revision, Alcan would be deemed in compliance.

EPA had previously approved the bubble concept generally, but it advised the Region that the proposed plan was deficient. Following a request for reconsideration, EPA advised the Region on July 7, 1986, that it usually recommended only one day or one week averaging periods for emissions, but that Alcan "would be out of compliance, even if the 30–day averaging time was granted."

### B.

Several events occurred while the parties were attempting to resolve their disagreements over the proposed revision. First, the Region filed suit in district court to compel EPA to approve the proposed revision. Such an action may be brought pursuant to section 304(a)(2) of the Act, 42 U.S.C. § 7604(a)(2), by any person who claims that EPA has failed to perform a nondiscretionary act or duty imposed upon it by the Act. Soon thereafter, without reference to the proposed revision, EPA notified Alcan that seven of its presses failed to comply with existing Regulation 6.29. This notice of noncompliance led to further discussions between EPA and Alcan. While these discussions were taking place, EPA published uniform criteria and procedures for bubble plan reviews. 51 Fed.Reg. 43814–60 (Dec. 4, 1986). The bubble plan contained in the proposed Kentucky SIP revision did not satisfy these criteria.

On July 15, 1987, the United States, at the request of EPA, filed this enforcement suit. At that time EPA had taken no formal action with respect to the proposed SIP revision. Although the regional administrator of EPA had recommended that the

proposed revision be disapproved, at the time the case was submitted to the district court on Alcan's motion for summary judgment, EPA still had not acted on the proposed revision. We are advised that after the district court entered final judgment dismissing the action, EPA rejected the proposed SIP revision for failure to demonstrate the necessity of employing an averaging period greater than twenty-four hours. 53 Fed.Reg. 40745 (Oct. 18, 1988).

### III.

At least five courts of appeals have considered the question of whether EPA is required to act on a proposed SIP revision within four months after its submission. Four courts have applied the four-month rule to proposed revisions. See *Duquesne Light Co. v. E.P.A.*, 698 F.2d 456, 471 (D.C.Cir.1983); *United States v. General Motors Corp.*, 876 F.2d 1060, 1066 (1st Cir.1989); *Council of Commuter Organizations v. Gorsuch*, 683 F.2d 648, 651–52 n. 2 (2d Cir.1982); *Council of Commuter Organizations v. Thomas*, 799 F.2d 879, 888 (2d Cir.1986); *American Cyanamid Co. v. E.P.A.*, 810 F.2d 493, 495 (5th Cir. 1987); *General Motors Corp. v. E.P.A.*, 871 F.2d 495, 498 (5th Cir.1989). This court is the only one to have suggested that the four-month rule does not apply. In *United States v. National Steel Corp.*, 767 F.2d 1176 (6th Cir.1985), we affirmed judgment for the government in an enforcement action. In upholding the district court, we rejected the defendant's contention that enforcement violated its substantive due process rights.

*National Steel* and the present case are similar in that the defendant in each sought to avoid expenditures to bring its operations into compliance under an existing SIP by proposing a revision based on the bubble concept. In *National Steel,* however, there had been an earlier section 113 action in which the government and National Steel had entered into a consent decree setting forth the dates by which National Steel must take various steps to comply with the existing SIP. The consent decree specifically provided that an application for

a bubble would not postpone the compliance dates. Despite this provision, National Steel did not begin installing pollution control equipment by the required dates, and cancelled purchase orders for the equipment when it sought approval of the bubble alternative. We agreed with the district court that National Steel "had made a business decision to risk the penalties inherent in violating the consent decree on the gamble that the EPA would approve the bubble." 767 F.2d at 1179.

It is clear that we decided *National Steel* on due process grounds. We concluded that all the circumstances, most importantly the consent decree's provision prohibiting the use of a proposed SIP revision to postpone compliance dates, negated a finding of a due process violation. Our only reference to the four-month rule consisted of a footnote. In response to one of National Steel's alternative arguments, we wrote:

> National claims that section 110(a)(2) of the Clean Air Act ... requires the EPA to approve or disapprove proposed SIP revisions within four months of their submittal by the state. Section 110(a)(2) requires action within four months for general state plans submitted under section 110(a)(1), not for revisions to state plans governed by section 110(a)(3)(A).

767 F.2d at 1182–83 n. 1.

We do not believe that the quoted language precludes our reexamination of the question. As the First Circuit noted in *United States v. General Motors Corp.*, 876 F.2d at 1066, the statement is "arguably dicta." Upon close scrutiny the footnote says nothing more than that section 110(a)(2), which applies to "general" state plans, does not require action within four months on proposed revisions that are governed by section 110(a)(3)(A). Alcan and amici do not contend that section 110(a)(2) requires anything with respect to proposed revisions. They argue that section 110(a)(3)(A), which does apply to revisions, incorporates the four-month requirement, at least by implication. They contend that EPA's duty, set out in section 110(a)(3)(A), to approve any SIP revision if EPA "deter-

mines that it meets the requirements of paragraph (2)" refers to the time limit of section 110(a)(2) as well as to the substantive requirements of section 110(a)(2)(A) through (K). This reading of the statute is supported by the language of section 110(g)(1),[1] where Congress referred to the duty to approve or disapprove a proposed plan revision "within the required four month period." This court did not refer to section 110(g) in *National Steel.*

We believe the courts that have examined the matter and found the four-month rule to apply have reached the correct conclusion. We recognize that such a requirement is not manifest from reading section 110(a)(3)(A). However, it seems clear to us that Congress intended to incorporate the time limit, and felt it had done so by referring to "the requirements of paragraph (2)." Although a subsequent Congress' interpretation of legislation enacted by an earlier one is not binding, that interpretation carries obvious weight. Section 110(a) and section 110(g) were enacted within seven years of each other at a time when environmental issues were in the very forefront of national concern. We are persuaded that the ninety-fifth Congress correctly interpreted the intent of the ninety-first.

Further, as Judge Coffin pointed out in *General Motors*, this is not an instance in which an agency's interpretation of a statute should be accorded great deference:

> Congress did not use inherently broad language here suggesting that it intended for the EPA to fill in the gaps, nor is there any other indication that Congress wished to delegate interpretative authority to the Agency on this issue. Moreover, we think it dangerous to defer in a situation such as this where the Agency has a substantial institutional interest in not imposing constraints on itself.

1. Section 110 was added to the Act in 1970. In a 1977 amendment, codified as section 110(g), Congress granted to state governors the authority to issue temporary emergency suspensions of parts of an SIP for which a proposed revision had been submitted and "which [EPA] has not approved or disapproved under this section within the required four months period." 42 U.S.C. § 7410(g)(1).

876 F.2d at 1066. We agree. Given the primary role of the states in implementing air quality standards, it is difficult to conclude that EPA is not required to act with dispatch on a revision proposed by a state. Application of the four-month rule to proposed revisions will assure reasonably prompt action.

### IV.

The courts that have found the four-month deadline applicable to SIP revisions have not agreed on the consequences that should follow from EPA's failure to act within that time frame. In the two *Council of Commuter Organization* cases, EPA's failure to act on a proposed SIP revision was a subsidiary issue. Although the Second Circuit held in both decisions that the Act requires EPA to approve or disapprove a proposed revision within the four-month period, 683 F.2d at 651–52 n. 2 and 799 F.2d at 888, the court did not examine all of the possible judicial responses to EPA's failure to act. It did note, however, that "tardiness by EPA is not a basis for granting a petition for review of action that satisfies the substantive requirements of the Act," and that the remedy for undue delay is a suit to compel EPA to perform a nondiscretionary act. 799 F.2d at 888.

The District of Columbia Circuit and the Fifth Circuit have examined the available options, and have reached quite different conclusions. Although the cases in both circuits involved petitions to review agency action under section 120 [2] rather than a section 113 enforcement action, we believe the approach to the issue of consequences for the agency's failure to act within four months should be the same. In *Duquesne Light Co. v. E.P.A.*, 698 F.2d 456 (D.C.Cir. 1983), the court rejected the industry peti-

2. Section 120, 42 U.S.C. § 7420, provides penalties for noncompliance with established standards sufficient to remove any economic advantage that the violator would gain over complying sources—"the economic value of noncompliance."

tioners' claim that a source in compliance with the standards of a proposed revision upon which EPA has failed to act may not be assessed penalties even though it is out of compliance with the existing SIP. As the court noted, a proposed revision is exactly what its name implies—a proposal, and nothing more. *Id.* at 471. If the industry view were adopted, "states could circumvent requirements of the Act by proposing revisions to their SIPs." *Id.* The court, however, found that it would be inequitable to permit EPA to continue to assess penalties against sources out of compliance with existing SIPs, but in compliance with proposed revisions, no matter how long EPA took to act on the proposals. The court adopted a solution that it believed would be fair to both the industry sources and EPA while at the same time protecting the public from the hazards of air pollution. It required EPA to develop a regulation under which

> once the statutory deadline for acting on a SIP revision passes, the noncompliance penalty is held in abeyance pending final action on the SIP by EPA. Should EPA ultimately reject the SIP, the penalty should be calculated back to the deadline, with interest. Such a regulation will protect a source in compliance with air quality standards from the time EPA should have approved an eventually approved SIP revision and will remove any economic benefit accruing to a source not in compliance with the law if the SIP revision is not approved.

*Id.* at 472.

The Fifth Circuit has followed a different approach. Emphasizing the primary role of the states in implementing the Act and the need for cooperative efforts, the court held in *American Cyanamid Co. v. E.P.A.*, 810 F.2d 493, 500 (5th Cir.1987), that "the EPA may not collect a penalty for the period between (1) four months after a state submits a proposed revision and (2) the date the EPA rejects that revision." The court also held that "when the EPA issues its Notice of Noncompliance more than four months after a state proposes a SIP revision, the EPA may not commence § 7420 proceedings until it rejects the pro-

posed revision." *Id.* at 501. The court applied the same reasoning where EPA failed to act on a "delayed compliance order" issued pursuant to section 113(d) within 90 days of the notice of issuance. *General Motors Corp. v. E.P.A.*, 871 F.2d 495, 487–98 (5th Cir.1989).

### B.

Writing for the court in *United States v. General Motors Corp.*, 876 F.2d 1060 (1st Cir.1989), Judge Coffin attempted to fashion a middle course. Shortly before the compliance deadline under the existing SIP, General Motors proposed an SIP revision to extend the deadline so that General Motors could complete construction of complying facilities. Massachusetts approved the revision. A year and a half later, the government filed a § 113 action to enforce the existing SIP. One year after that, two and a half years after Massachusetts submitted the proposed revision, EPA finally rejected the proposal. The district court applied the four-month rule, barring an enforcement action under the existing SIP during the period between expiration of the four-month deadline and the time EPA finally acts on the proposed revision. Accordingly, the district court dismissed the enforcement action.

After considering arguments on both sides, the court of appeals agreed that "the four month deadline was meant to apply to EPA review of SIP revisions as well as to EPA review of original SIPs." *Id.* at 1066. While acknowledging that the Fifth Circuit's rule furnishes the strongest incentive for EPA to act within four months, the court concluded that an automatic bar to an enforcement action is not the best remedy. *Id.* at 1067. The First Circuit agreed with the Fifth Circuit, however, that the D.C. Circuit's rule offered too little incentive for EPA to act with dispatch. Accordingly, the First Circuit approved a "twofold" remedy. *Id.*

Under one approach, if either an emissions source or a state believes EPA has not taken final action on a proposed revision within a reasonable time, the affected

party may, after the four-month period expires, bring an action under section 304(a)(2) to compel the agency to act. In such a proceeding the district court "should assess the Agency's reasons for not complying with the four-month time limit and take such action as it deems reasonable." *Id.* at 1068. The court must consider all the circumstances of each case, using failure to observe the four-month requirement as "a rough guidepost." *Id.*

The court should apply the same principles under the second alternative. If EPA files a section 113 action to enforce the existing SIP when a proposed revision has been submitted for more than four months without final approval or disapproval, rather than dismissing the action, the district court should adjust the penalties after considering (1) the reasonableness of the delay, (2) the prejudice the delay has caused the company, and (3) the factors listed in section 113(b).[3]

The court gave an example of how its formula would work:

> If, for example, a trial court finds that the review process should have taken ten months rather than two years, it may decline to award penalties for the fourteen months of unwarranted delay. Accordingly, if on remand in this case, the district court finds that GM was prejudiced by the Agency's lengthy review and that the delay was not justified or that some portion of the delay was not justified, it may reduce the penalties in a manner it sees fit.

*Id.* at 1068 (footnote omitted).

## V.

■■■ In the present case the district court followed the Fifth Circuit's decision in *American Cyanamid* and dismissed the enforcement action. We believe this was error. The Supreme Court has expressed reluctance to treat statutory commands that an agency act within a given time as jurisdictional requirements. In *Brock v.*

*Pierce County,* 476 U.S. 253 [106 S.Ct. 1834, 90 L.Ed.2d 248] (1986), the Court stated in a unanimous opinion:

> This Court has frequently articulated the "great principle of public policy, applicable to all governments alike, which forbids that the public interest should be prejudiced by the negligence of the officers or agents to whose care they are confided." *United States v. Nashville, C. & St. L. R. Co.,* 118 U.S. 120, 125 [6 S.Ct. 1006, 1008, 30 L.Ed. 81] (1886). See also *Guaranty Trust Co. v. United States,* 304 U.S. 126 [58 S.Ct. 785, 82 L.Ed. 1224] (1938); *Stanley v. Schwalby,* 147 U.S. 508, 515 [13 S.Ct. 418, 421, 37 L.Ed. 259] (1893). We would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake. When, as here, there are less drastic remedies available for failure to meet a statutory deadline, courts should not assume that Congress intended the agency to lose its power to act.

*Id.* 476 U.S. at 260, 106 S.Ct. at 1839 (footnote omitted).

## A.

As a practical matter, in view of past performances, EPA will likely continue to miss the four-month deadline. It is not clear whether the requirement is unrealistic in view of the number of proposals submitted, or whether EPA's procedures are too cumbersome. Regardless of the cause for delay in so many cases, courts must apply remedies that, as nearly as possible, promote the primary purpose of the Act—improvement of the quality of the nation's air. The public should not suffer because of EPA's failures.

Clearly remedies less drastic than dismissal are available for EPA's failure to act within four months. Judged by the history of this case, the alternative remedy of suit

---

**3.** Section 113(b) provides: "In determining the amount of any civil penalty to be assessed under this subsection, the courts shall take into consideration (in addition to other factors) the size of the business, the economic impact of the penalty on the business, and the seriousness of the violation." 42 U.S.C. § 7413(b).

under section 304(a) to compel EPA to rule is not very effective. As we have noted, the Region filed such an action before the government filed the present one, but as far as the record shows, nothing came of it. Apparently, when the government filed the enforcement action the court and the parties viewed that action as the best vehicle for resolving the issues in dispute. For whatever reason, it is clear that the Region's section 304(a) action did not cause EPA to rule on the proposed revision. The final ruling on the proposed revision came well over two years after the section 304(a) suit was filed.

We believe the most effective remedy is the second one proposed by the First Circuit. The district court clearly has discretion to determine what penalties should be imposed for noncompliance. Section 113(b) provides for an injunction *or* a civil penalty *of not more than* $25,000 per day of violation, *or both.* Any prejudice to the violator resulting from EPA's delay in ruling on a proposed SIP revision and EPA's reasons for delay are among the factors to be taken into account in determining penalties.

When the government files a section 113 suit against an emissions source that claims to be in compliance with the standards of a proposed SIP revision upon which EPA has failed to act within four months, the remedy will depend upon each party's proof. If the source does not establish that it is in compliance with the proposed revision, the court may assess penalties from the date of the notice of noncompliance. If the source demonstrates that it has met the standards of the proposed revision, the government has the burden of justifying EPA's delay in acting on the proposal. The court must then balance the reasonableness of the delay against whatever prejudice the source is able to establish. This balancing will determine whether a civil penalty fine is proper and, if proper, whether the fine will commence with the date of notice of noncompliance, the date of final action on the proposed SIP revision, or some date in between.

B.

■ Here Alcan has proposed and Kentucky has approved a SIP revision. The government issued a notice of noncompliance with the existing SIP, even though EPA had not rejected the proposal within the required four-month period. Alcan asserts that it has complied with the proposed SIP. If it can prove this assertion, then the government must prove that EPA's delay in taking final action on the proposal was reasonable. In this regard, Alcan and amici argue that the proposed bubble plan would have qualified for approval under EPA's "generic bubble rule" in force when Kentucky submitted the proposed revision. Alcan claims that EPA delayed its ruling on the proposed SIP revision until it could formulate regulations that would render the proposed bubble plan unacceptable. If these claims are true, the government cannot satisfy its burden of proving that EPA's delay in rejecting the proposals was reasonable. In this situation, the district court may assess fines beginning only from the date the new bubble regulations took effect. Regardless of the date from which the district court begins assessing civil penalties, the court retains the discretion to assess the amount of penalties based on the equities as disclosed by the proof.

CONCLUSION

Although the district court correctly concluded that the four-month deadline for EPA action applies to proposed SIP revisions as well as to original SIPs, it applied the wrong remedy. The government's action sought penalties only for violating the existing SIP, but Alcan's affirmative defense rested on EPA's failure to act on the proposed revision. There is no dispute that Alcan was in violation of the standards established under the existing SIP. Given Alcan's defense, it was necessary for the court to know whether Alcan was in compliance with the proposed revision as the first step in determining the penalty issue. The evidence on this question, consisting of conflicting affidavits, was in sharp dispute.

The summary judgment of dismissal is reversed, and the case is remanded. The

district court will reinstate the action and conduct further proceedings consistent with this opinion.

RYAN, Circuit Judge, concurring.

My brother's excellent opinion resolves, correctly I think, at least two very difficult issues. While I concur in the court's judgment, I write separately because I am uncomfortable with the court's description of the criteria to be considered by the district court upon remand, and presumably by other courts in like cases hereafter, in determining the remedy that may be imposed in an enforcement action brought by the government under 42 U.S.C. § 7413(a) in which the alleged polluter previously filed a proposed revised SIP with the Environmental Protection Agency.

The majority opinion rejects as unwarranted the remedy formula adopted for such cases in the Fifth and District of Columbia Circuits, *American Cyanamid Co. v. U.S.E.P.A.*, 810 F.2d 493 (5th Cir. 1987), and *Duquesne Light Co. v. E.P.A.*, 698 F.2d 456 (D.C.Cir.1983). It subscribes instead to the second prong of the remedy adopted by the First Circuit in *United States v. General Motors Corp.*, 876 F.2d 1060 (1st Cir.1989).

While I have considerable reluctance to tell the district court on remand, and implicitly, district courts faced with similar cases in the future, what may and may not be considered in determining appropriate penalties for a proved violation of § 113(a), I must confess that Congress' failure to address the situation that has arisen in this case leaves us no alternative. I agree with my brothers that we are duty bound to fashion a remedy formula in a case of this kind, particularly given the diametrically opposite enforcement formulae spelled out in the cited cases from the Fifth and District of Columbia Circuits. Moreover, I agree that of the choices suggested to us, the approach devised by the *General Motors* court makes the most sense and most nearly conforms to the language of the statute and the apparent intent of Congress.

I write separately, however, because the majority opinion's description of the process and criteria for the assessment of penalties and remedies for a § 113(a) violation where a proposed SIP revision is pending, seems to focus, inappropriately in my judgment, more upon the question of the alleged polluter's compliance with the proposed SIP revision than with the existing SIP, for violation of which the § 113(a) action was brought in the first place.

According to the majority opinion, when the government files a § 113(a) action against an alleged polluter which defends on the theory that it is in compliance with a proposed revised SIP, the question of penalties, if any, is determined substantially, if not entirely, by litigation about whether the polluter has complied with the proposed revised SIP:

> If the source does not establish that it is in compliance with the proposed revision, the court may assess penalties from the date of the notice of noncompliance. If the source demonstrates that it has met the standards of the proposed revision, the government has the burden of justifying EPA's delay in acting on the proposal. The court must then balance the reasonableness of the delay against whatever prejudice the source is able to establish. This balancing will determine whether a civil penalty fine is proper and, if proper, whether the fine will commence with the date of notice of noncompliance, the date of final action on the proposed SIP revision, or some date in between.

At 1521.

While the foregoing is a quotation from only a portion of the majority opinion, it embodies the essence of the court's instructions to the lower court on remand, and presumably to all district courts that will address cases of this kind in the future. The difficulty it seems to me is that the court's opinion describes a procedure for determining appropriate penalties for noncompliance with a proposed revised SIP that has no legal efficacy whatever, and appears to completely lose sight of the fact that the government's enforcement action

is all about an alleged violation of an existing SIP—not some other, and one can be sure, different and less burdensome, SIP the alleged polluter wished were in place.

Perhaps it is merely a matter of emphasis, but I prefer the description of the remedy determining process as set forth in *General Motors*, because there it appears to be emphasized that the business at hand is a determination whether the existing SIP has been violated and what penalties should follow therefrom if it has. With that as the primary emphasis, the *General Motors'* court observes, almost as an aside, that in determining penalties the district court is warranted in taking into account "other factors" *among which* is the reasonableness of the government's delay in acting upon the alleged polluter's proposed revised SIP.

The *General Motors* court said:

When the Agency brings an enforcement action under § 113, the district court has the responsibility for determining the amount of penalties to assess. The Act expressly permits the court to "take into consideration (in addition to other factors) the size of the business, the economic impact of the penalty on the business, and the seriousness of the violation." § 113(b). The EPA agrees that, among these "other factors," the court *may* consider the reasonableness of the Agency's delay and the prejudice, if any, suffered by the company as a result. If, for example, a trial court finds that the review process should have taken ten months rather than two years, it may decline to award penalties for the fourteen months of unwarranted delay. (Emphasis added.)

876 F.2d at 1068.

I do not suggest for a moment that my brother's opinion does not faithfully restate the remedy formula announced in *General Motors* in a way that is relevant to the case at hand. I suggest only that the text of the majority opinion should not be read as adopting a rule for this circuit that the way

for a polluter to avoid penalties for an out-and-out violation of an existing SIP is to file a proposed revised SIP "wish list" and then when a § 113(a) enforcement action is brought, file an affirmative defense alleging compliance with a proposed revised SIP and take comfort that the enforcement litigation will have to do with compliance with the proposed SIP and not the existing one.

Why a proven polluter should not be appropriately penalized for a violation of an existing SIP, simply because it has complied with a proposed SIP that it wished had been adopted and the agency has not adopted, is difficult for me to understand.[1] Perhaps the answer is that it will "sufficient unto the day" when we are presented with a district court enforcement decision in which the government attempts to demonstrate that the district court erroneously failed to keep its eye on the ball that was in play instead of the one the "source" wished were.

In all events, I concur in the court's judgment that the summary judgment was improperly entered in this case and that the matter must be remanded for further proceedings.

---

1. In this case for example, when the EPA got around to acting on the appellant's proposed

revised SIP it was disapproved.